Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

**FILED IN CLERK'S OFFICE**
~~U.S.D.C. Atlanta~~

# UNITED STATES DISTRICT COURT

DEC 19 2023

for the

Northern District of Georgia

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

|  |  |
|---|---|
| Frances M Santiago-Cruz | Case No. **1:23 -CV- 5841** |
| _____ | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* [✔]Yes [ ]No |
| -v- | |
| Dignity Health Medical Foundation | |
| _____ | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.    The Parties to This Complaint**

   **A.    The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   |  |  |
   |---|---|
   | Name | Frances M Santiago-Cruz |
   | Street Address | 1172 Cayman Lane SW |
   | City and County | Marietta, Cobb County |
   | State and Zip Code | Georgia 30008 |
   | Telephone Number | (916) 880-0621 |
   | E-mail Address | asmile4ya1 @yahoo.com |

   **B.    The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Dignity Health Medical Foundation |
| Job or Title *(if known)* | c/o Erica H Gruver - System Director Senior Counsel |
| Street Address | 330 North Brand Boulevard, Suite 400 |
| City and County | Glendale, Los Angeles |
| State and Zip Code | California 91203 |
| Telephone Number | (626) 744-2411 |
| E-mail Address *(if known)* | erica.gruver@commonspirit.org |

Defendant No. 2

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.   Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Dignity Health Medical Foundation |
| Street Address | 3400 Data Drive |
| City and County | Rancho Cordova, Sacramento County |
| State and Zip Code | California 95670 |
| Telephone Number | (916) 535-2020 |

NOTE: Plantiff worked remotely for Defendant from address listed above in Cobb County. That was the location where the discriminatory behavior occurred. [28 USC 1391 (b)(2)]

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☐   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑   Other federal law *(specify the federal law)*:

29 CFR 1630.9a

☑   Relevant state law *(specify, if known)*:

California Civil Code 1710

☐   Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### III.     Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☑ Other acts *(specify)*:     Fradulent/Negligent Misrepresentation

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.     It is my best recollection that the alleged discriminatory acts occurred on date(s)

October 6, 2022

C.     I believe that defendant(s) *(check one)*:

- ☐ is/are still committing these acts against me.
- ☑ is/are not still committing these acts against me.

D.     Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☐ race _____
- ☐ color _____
- ☐ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____        *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

Anxiety (F41.9), Depression (F34.1), ADHD (F90.9)

E.     The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See Attached

NOTE:

EEOC Charge of Discrimination dated November 14, 2022 will be attached as EXHIBIT 1
EEOC Determination and Notice of Rights dated September 21, 2023 will be attached as EXHIBIT 2
EEOC Agreement to Mediate dated November 26, 2022 will be attached as EXHIBIT 3

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

11/14/2022 Atlanta Office. On 11/23/2022, EEOC identified the charge to be appropriate for early mediation. On 11/26/2022, I completed the Agreement to Mediate but Defendant declined to participate.

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☑   issued a Notice of Right to Sue letter, which I received on *(date)*   09/21/2023   .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See Attached Prayer for Relief

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.        For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            12/17/2023

Signature of Plaintiff

Printed Name of Plaintiff       Frances Santiago-Cruz

### B.        For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

# FACTS IN SUPPORT

1. FRANCES M SANTIAGO-CRUZ began working for Dignity Health Medical Foundation ["DHMF"] on April 26, 2020 as a Contract Specialist.

2. Prior to the filing of a charge with the EEOC, PLAINTIFF'S work performance exceeded DEFENDANT'S expectations as evidenced by her performance reviews and she was never subject to any disciplinary actions. PLANTIFF was always able to meet the essential functions of her job, with or without a reasonable accommodation, and was often relied upon by her leadership and peers as a subject matter expert having joined DHMF with over twenty (20) years of contracting experience. In fact, PLAINTIFF was the team's top performance responsible for the Provider Contracting needs of 67.2% of Providers employed by DHMF as of her July 2022 review.

3. DEFENDANT recognized PLANTIFF'S accomplishments by receiving annual merit increases and bonuses. PLAINTIFF also received two spot bonuses due to her exceptional performance and a letter of recognition from the CAO of Mercy Medical Group who is affiliated with DEFENDANT in July 2022.

4. PLAINTIFF has been diagnosed and treated for Unspecified Anxiety Disorder (F41.9), Persistent Depressive Disorder (F34.1) and Attention-Deficit Hyperactivity Disorder (F90.9). These diagnoses were corroborated by Dr. Albert Lopez, a Qualified Medical Examiner who evaluated the PLANTIFF at the request of the DEFENDANT in April 2023 (SEE EXHIBIT 4 – QME Report) as part of her worker's compensation claim. Therefore, PLAINTIFF is a qualified individual with a disability under the American with Disability Act. PLAINTIFF disclosed her disability to DEFENDANT in new hire paperwork completed in March 2020.

1

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

PLAINTIFF was not in need of a reasonable accommodation when she began her job as her condition was stable.

5. On May 19, 2022, PLAINTIFF filed a complaint with Human Resources against her manager, JUNE WATSON-SHERMAN for FMLA interference, PTO violations, disparate treatment, and failure to promote. PLAINTIFF had been on an intermittent FMLA leave since November 2021 to care for her ailing mother.

6. On July 5, 2022, STEPHANIE MCINTOSH, the Human Resources Business Partner, who conducted the investigation into the allegations presented on May 19, 2022, sent PLAINTIFF a letter addressing her findings. Her letter did not address many of the complaints that PLAINTIFF had brought forth especially and most importantly that of FMLA interference.

7. On July 12, 2022, PLAINTIFF provided a written response to the July 5th letter, reiterating her complaints, and adding claims for retaliation and hostile work environment stemming from behavior from JUNE WATSON-SHERMAN that had begun to occur after she became aware that PLAINTIFF had filed a complaint against her with Human Resources.

8. PLAINTIFF was soon notified that JILL LATSUZEK, a Sr. HR Business Partner, would be reassigned to investigate the updated claim filed. On JULY 19, 2022, MS. LATSUZEK met with PLAINTIFF to review her allegations and informed her that her investigation would take at least thirty (30) days.

9. At that time, PLAINTIFF felt that the manager's behavior and the hostile work environment it was creating was exasperating her medical condition by substantially limiting major life activities such as her ability concentrate, sleep, think, and causing gastrointestinal issues which negatively impacted

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

her ability to perform the essential functions of her job. PLAINTIFF'S primary care physician placed her on stress leave beginning on JULY 20, 2022 as a result.

10. On July 20, 2022, PLAINTIFF discussed the matter with MS. LATSUZEK insisting she wanted to continue to work but that things had become unbearable and requested a reasonable accommodation that would include minimizing contact with MS. WATSON-SHERMAN while she conducted her investigation. PLAINTIFF hoped the request would only need to be temporary as she anticipated that the DEFENDANT would properly address the issues at hand, allowing PLAINTIFF's condition to stabilize so an accommodation would no longer be necessary. MS. LATSUZEK provided PLAINTIFF with both worker's compensation paperwork and the paperwork required to request a reasonable accommodation which required medical certification.

11. PLAINTIFF remained on leave until July 28, 2022 as MS. LATSUZEK was on PTO. Immediately upon her return she met with the PLAINTIFF and her Director, FRANCIE BARNETT, to engage in the interactive process. Within 24 hours the reasonable accommodation was in place through the end of August and PLAINTIFF was able to return to work on July 29, 2022. PLAINTIFF chose not to pursue the worker's compensation claim as she hoped the accommodation would remedy the situation.

12. As the end of August approached MS. LATSUZEK had not completed her investigation. On August 30, 2022, PLAINTIFF requested an extension to her accommodation and again within 24 hours it was immediately granted through September 30, 2022.

13. On September 15, 2022, MS. LATSUZEK held a video call with PLAINTIFF accompanied by JUSTIN WILLIAMS, Director Human

3

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

Resources, to discuss their findings. PLAINTIFF was notified that many of her claims were found to be "unsubstantiated" but that other issues were addressed in accordance with company policy and that due to the confidential nature of any disciplinary action no further information could be shared. HR refused to provide their findings to PLAINTIFF in writing upon her request.

14. During that conversation PLAINTIFF was advised that they would be crediting her back three (3) days of bereavement and several days of PTO as a result of their investigation. PLAINTIFF was given an exception to DEFENDANT'S bereavement policy and informed the hours would need to be used by the end of the calendar year. PLAINTIFF was then instructed to notify HR immediately of any new claims regarding retaliatory or disparate treatment and that those matters are taken seriously and would be investigated thoroughly.

15. DEFENDANT then informed PLAINTIFF that all other remedies sought as part of her claim would need to be addressed by FRANCIE BARNETT as they were operational decisions. This included but was not limited to her claim regarding a failure to promote and her request to report to a new leader to help mitigate the situation.

16. In DEFENDANT'S Position Statement to the EEOC dated May 4, 2023m they stated that MS. BARNETT took part in the September 15th meeting with Human Resources [SEE EXHIBIT 5 – Position Statement] which was false. PLAINTIFF immediately emailed MS. BARNETT following the meeting with HR requesting to discuss the remedies deferred to her. MS. BARNETT subsequently informed the PLAINTIFF that she would need to discuss the matters with her boss, JANE WELDON, and would follow-up

4

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

with her. Ms. Barnett confirmed she was aware that PLAINTIFF'S accommodation was set to expire on September 30, 2022.

17. On September 28, 2022, MS. BARNETT contacted the PLAINTIFF via Google Chat where she acknowledges the need to connect with the PLAINTIFF but that she was unavailable because she was travelling. PLAINTIFF reminded her that her accommodation was set to expire in two days. MS. BARNETT acknowledged this and informed PLAINTIFF that she was seeking guidance from HR as to whether they could "unofficially" extend it. [SEE EXHIBIT 6 – HR RESPONSE]

18. On September 30, 2022, at 1:11pm MS. BARNETT contacted PLAINTIFF and informed her that she could "unofficially" extend it without the need for additional paperwork from her treating physician. During this conversation MS. BARNETT expressed no concerns about extending it. The mention of an "unofficial" extension demonstrates that the DEFENDANT was aware that the PLAINTIFF was still in need of an accommodation. Again at no time did DEFENDANT request updated information from her doctor. PLAINTIFF requested that MS. BARNETT put the information regarding the "unofficial" extension in writing.

19. On September 30, 2022, at 3:47pm MS. BARNETT acknowledged the conversation with the PLAINTIFF however only stated that she would extend the accommodation through the 15th of October.

20. PLAINTIFF immediately emailed MS. BARNETT referencing the fact that she had never insinuated on their call that the accommodation was only to be extended for a limited time. In the email to MS. BARNETT, PLAINTIFF confirms that the lack of resolution was taking a toll on her both physically and emotionally. MS. BARNETT was very well aware that PLAINTIFF was in no condition to have her accommodation removed.

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

21. On October 4, 2022 at 1:13pm MS. BARNETT contacted DEFENDANT by phone referencing the email and assured her that she had nothing to worry about and that she was merely putting a date in place to ensure she followed up with PLAINTIFF regarding the remedies she sought. PLAINTIFF had absolutely no reason to believe her accommodation was in jeopardy or she would have immediately contacted her doctor and obtained any documentation needed.

22. On October 5, 2022, PLAINTIFF became aware from a peer of an offsite scheduled by MS. WATSON-SHERMAN for October 6, 2022 where she was excluded. The invitation was sent in such a way to teammates that it was hidden on their calendars and PLAINTIFF would not realize anything was scheduled. Given the timing and circumstances, PLAINTIFF felt that her exclusion was blatantly retaliatory and requested a meeting with AC SAECHAO, VP of Human Resources, JUSTIN WILLIAMS, Director of Human Resources and FRANCIE BARNETT to file a new claim of retaliation and disparate treatment against MS. WATSON-SHERMAN as she was directed to do in her September 15, 2022 meeting with Human Resources.

23. DEFENDANT'S Remote Work Policy and CommonSpirit's Remote Worker's agreement both indicate that remote workers are still expected to come into an office for team meetings, project work, new team onboarding, etc. This was also a condition discussed with the PLAINTIFF when she was approved to relocate to Georgia in August 2021. PLAINTIFF understood that she could be asked to come back by leadership to participate in team events and agreed she would do so at her own expense. Therefore, it is reasonable to understand why PLAINTIFF deemed this behavior to be retaliatory.

6

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

24. In fact, PLAINTIFF had participated in an offsite with team members on September 29, 2021, at Olive Garden in Citrus Heights, California after she had relocated to Georgia. She attended another one virtually (since her mother had just passed) held at Zocolo's in April 2022. To the best of her knowledge, she had never been excluded from an invite and felt that the retaliatory behavior was continuing.

25. HR was unavailable to meet, so PLAINTIFF initiated the grievance solely with MS. BARNETT in a phone conversation held on October 6, 2022. In addition, to being excluded from the offsite there were other ongoing concerns about MS. WATSON-SHERMAN'S behavior that PLAINTIFF had been bringing to MS. BARNETT'S attention including taking credit for PLAINTIFF's work.

26. MS. BARNETT attempted to minimize the situation as a "coachable" moment despite being completely unaware herself an outing was scheduled. MS. BARNETT even mentioned that t-shirts for the team were en route to MS. WATSON-SHERMAN so found it odd.  PLAINTIFF expressed her frustration regarding her dismissiveness in light of everything that had been occurring. It was during this conversation that MS. BARNETT informed PLAINTIFF, without explanation, that her reporting structure would not be changing **and** that she would not be extending her accommodation beyond October 15, 2022.

27. PLAINTIFF immediately contacted Human Resources and JANE WELDON, MS. BARNETT's supervisor, pleading for assistance. PLAINTIFF felt as though she was being "pushed out" of her job simply for standing up for herself. They failed to respond in a timely manner.

28. On October 11, 2022, PLAINTIFF provided DEFENDANT with a note from her treating physician indicating that PLAINTIFF would need to be

7

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

placed on a leave of absence if her accommodation was not maintained. DEFENDANT failed to respond and never asked for clarifying information as suggested by DEFENDANT in their position statement to EEOC. FMLA paperwork required medical certification so PLAINTIFF could have just as easily obtained any updated documentation needed to maintain her accommodation but DEFENDANT did not act.

29. Due to their failure to respond, PLAINTIFF was placed on FMLA by her treating physician where he specifically states "she is not able to work due to job not being able to provide a reasonable accommodation", PLAINTIFF'S FMLA began October 19, 2022, after she exhausted the bereavement days she was credited as part of grievance. [EXHIBIT 7 – FMLA Certification]

30. In DEFENDANT'S Position Statement to the EEOC dated May 4, 2023, they falsely assert that, "On or about October 15, 2022, Respondent offered, and claimant accepted, a 90 day extension to her accommodation". This is definitively contradicted by PLAINTIFF'S time keeping records [EXHBIT 8 – Time Keeping Records] and documentary evidence, which show that she was forced to remain on leave until December 19, 2023 [EXHIBIT 9 – Resolution of Request for Accommodation Dated December 15, 2022], without pay before her accommodation was reinstated.

31. On or about October 20, 2022, PLAINTIFF filed a worker's compensation claim regarding the same set of facts against DEFENDANT. As part of that claim six (6) different medical professionals evaluated the PLAINTIFF and notified the DEFENDANT and SEDGWICK, their claim's administrator, that she could return to work "*without restriction*" if her accommodation was reinstated and they did not act.

32. PLAINTIFF repeatedly attempted to escalate her concerns reaching out to AC SAECHAO, VP of Human Resources, KRISTY KELLY, SVP of

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

Human Resources, and EVP of Human Resources DARRYL ROBINSON pleading for them to intervene so she could return to work yet she still remained off work for over 8 weeks. Having exhausted all recourses PLAINTIFF filed a claim with EEOC on November 14, 2022.

## CLAIM ONE

## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT – FAILURE TO MAINTAIN A REASONABLE ACCOMMODATION, 42 USC § 12181 ET SEQ., 29 CFR 1640.9a

33. PLAINTIFF repeats and reaffirms paragraphs 1 through 32 here of, as if fully set forth herein.

34. PLAINTIFF has been diagnosed and has been treated for Unspecified Anxiety Disorder (F41.9), Persistent Depressive Disorder (F34.1) and Attention-Deficit Hyperactivity Disorder (F90.9) making them a "qualified individual with a disability" within the meaning of 42 USC § 12111 of the ADA. PLAINTIFF could perform the essential functions of her position with or without a reasonable accommodation as demonstrated by her evaluations.

35. PLAINTIFF disclosed their disability to the DEFENDANT prior to hire but did not need a reasonable accommodation until working conditions, due to her treatment by her manager, began exasperating her conditions substantially limiting her ability to concentrate, sleep and causing anxiety and gastrointestinal issues.

36. PLAINTIFF disclosed a need for a reasonable accommodation to the DEFENDANT in July 2022 and they immediately engaged with her in the interactive process. An accommodation was effectively put in place that helped mitigate her symptoms.

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

37. PLAINTIFF'S engaged in the protected activity of bringing a good faith claim of retaliation and disparate treatment to her director FRANCIE BARNETT against MS. JUNE WATSON-SHERMAN on October 6, 2022. MS. BARNETT responded to the claim by informing PLAINTIFF she would not extend her accommodation beyond October 15, 2022.

38. MS. BARNETT was fully aware of PLAINTIFF'S need to maintain the accommodation having personally witnessed PLAINTIFF when she was symptomatic and as demonstrated when she "unofficially" extended the accommodation on September 30, 2022.

39. MS. BARNETT relentlessly protected MS. WATSON-SHERMAN, whom she promoted, to the detriment of the PLAINTIFF, her teammates, and the business as a whole. MS. BARNETT as presented with countless amount of evidence regarding not only MS. WATSON-SHERMAN's behavior but the fact that during her time in that position as a "working manager" she had done very little to learn about Provider Contracting often relying on the help of PLAINTIFF and others and taking credit for their work. PLAINTIFF presented evidence that MS. WATSON-SHERMAN did not even submit her first contracting request in her new role until October 2022, eleven (11) months into her position. PLAINTIFF even showed MS. BARNETT a text message sent to MS. WATSON-SHERMAN with a video of her ailing mother having difficulty breathing to justify her use of her FMLA intermittent leave. Despite all of this information, MS. BARNETT protected her and punished the PLAINTIFF who had done but work tirelessly to assist her and the team.

40. As a result of these actions PLAINTIFF was forced to go on unpaid leave despite being the team's top performer forcing her teammates to needlessly have to take on her work at the detriment of the business. Yet, despite this

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

treatment, in good faith, PLAINTIFF worked until 3:17am EST on October 14, 2022, to leave a fourteen (14) page document with detailed instructions regarding outstanding items she working on to ensure the business and her teammates, to the best of her ability, would not be negatively impacted by her going on leave.

41. PLAINTIFF suffered damages as a result of MS. BARNETT'S unlawful discriminatory actions, including loss of wages/benefits between October 14, 2022-December 15, 2022, emotional distress, and the cost of bringing this action despite PLAINTIFF's repeated attempts to resolve this matter amicably.

42. PLAINTIFF seeks compensation for medical treatment as recommended by Dr. Albert Lopez in Qualified Medical Examiner Report. Dr. Lopez evaluated PLAINTIFF at the request of DEFENDANT as part of PLAINTIFF'S worker's compensation claim. [EXHBIT 4 – QME Report]

43. MS. BARNETT intentionally violated PLAINTIFF'S rights under the ADA with malice and reckless indifference by retaliating against her after she engaged in a protected activity. As a result DEFENDANT should be liable for punitive damages.

44. DEFENDANT falsely asserted to the EEOC that PLAINTIFF'S reasonable accommodation was never rescinded which is contradicted by facts provided herein. [SEE EXHIBITS 8&9]

**CLAIM TWO**

**Retaliation in Violation of the American's with Disabilities Act**
**42 USC § 12181 ET SEQ.**

45. PLAINTIFF repeats and reaffirms paragraphs 1 through 44 hereof, as if fully set forth herein.

11

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

46. On October 6, 2022, PLAINTIFF engaged in the protective activity of initiating a complaint against MS. WATSON-SHERMAN for her continued retaliatory and disparate behavior just three (3) weeks after she was informed by DEFENDANT retaliatory behavior had been substantiated in their recent investigation.

47. MS. BARNETT was aware that an accommodation was needed having just "unofficially" extended it September 30, 2022 yet nonetheless as a result of PLAINTIFF filing this new claim she retaliated by informing PLAINTIFF she would not extend her accommodation.

48. PLAINTIFF made numerous attempts to escalate the matter to HR and senior leadership, to no avail, pleading for someone to intervene before that deadline.

49. On October 21, 2022, she was finally contacted by JUSTIN WILLIAMS in HR who presented her with a different set of facts that had been presented to him by MS. BARNETT and also informing PLAINTIFF that she would have to start the accommodation process from the beginning despite DEFENDANT being fully aware of PLAINTIFF'S condition which also violates this statute and EEOC guidance.

50. PLAINTIFF subsequently responded to MR. WILLIAMS on October 23, 2022, detailing what had occurred and requesting to initiate retaliation claims against both Ms. WATSON-SHERMAN (regarding off-site) and MS. BARNETT for retaliating by rescinding her accommodation. [SEE EXHIBIT 6 – HR Response]

51. Despite the expediency shown by DEFENDANT when PLAINTIFF initially requested her accommodation in July 2022, DEFENDANT was unresponsive to requests for update and did not to reengage with

12

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

PLAINTIFF in the "interactive process" once new paperwork had been submitted.

52. On November 8, 2022, PLAINTIFF contacted AC Saechao, VP Human Resources and KRISTY KELLY, SVP Human Resources informing them she had not gotten an update and notifying them of her intent to submit a charge with the EEOC if the matter could not be resolved.

53. On November 15, 2022, PLAINTIFF received a Resolution to Request for Accommodation from MR. WILLIAMS denying the reinstatement of the accommodation previously approved by DHMF citing "undue business harm". In fact the denial did not address any of the information in the Request for Accommodation that had simply been copied by PLAINTIFF from previous submissions approved. [EXHIBIT 10 – Resolution to Request for Accommodation 11152023] This serves as further evidence to contradict DEFENDANT'S Position Statement to the EEOC where they indicate PLAINTIFF'S accommodation was never rescinded.

54. It was evident to the PLAINTIFF that the denial was based on false information provided to MR. WILLIAMS by MS. BARNETT and PLAINTIFF requested to meet with MR. WILLIAMS on November 18, 2022 to further discuss the matter. Please note that this was the first and only time MR. WILLIAMS met with PLAINTIFF during the "interactive process". PLAINTIFF questioned why MR. WILLIAMS would rely on information provided by MS. BARNETT, who was the subject of a retaliation investigation, to deny her request. Details of the meeting were referenced in a follow-up email sent to MR. WILLIAMS by PLAINTIFF on November 21, 2022. PLAINTIFF reiterates that the information provided to him used as the basis to deny the accommodation request were false and that MS. BARNETT was continuing to exhibit retaliatory behavior. PLAINTIFF

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

then requested that the HR consult with JANE WELDON, MS. BARNETT's manager, to resolve the matter. [EXHIBIT 11 – Email to Mr. Williams dated November 21, 2022}

55. PLAINTIFF was still unable to return to work until December 19, 2022 when accommodation was finally reinstated. [SEE EXHIBITS 8 & 9]

56. Upon return to work the retaliatory behavior continued. PLAINTIFF had two of her regions reassigned to team members despite never having performance issues and in spite of leadership knowing that a team member had expressed concern about their work load due to their own health issues. MS. BARNETT and MS. WATSON-SHERMAN cited "equity" as a reason for the change but could not substantiate it with appropriate metrics.

57. Leadership continued to engage in disparate treatment leaving PLAINTIFF out of meetings where information was discussed that was pertinent to her work and playing team members against each other.

58. After experiencing symptoms associated with a gastric ulcer in January 2023, PLAINTIFF asked MR WILLIAMS if her accommodations could be modified to address some of her issues. A meeting was held that included MS. BARNETT and MS. WATSON-SHERMAN as part of the interactive process. However, when the resolution was released PLAINTIFF'S concerns were largely ignored as many of her requests were denied. DEFENDANT did not provide her with any alternative solutions to help mitigate her symptoms.

59. In April 2023, PLAINTIFF's treating physician provided a note requesting that her accommodation be extended indefinitely and if possible for DEFENDANT to assist PLAINTIFF with possible reassignment.

60. Given the fact that her circumstances were not improving in her current role, PLAINTIFF began to apply for other positions on her own. On April 27,

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

2023, she was extended an offer at a higher wage to work with Woodland Memorial Hospital, an associated Dignity facility. Her transfer to her new position, at the higher wage, was delayed until June 12, 2023, by MS. WATSON-SHERMAN cited "staffing issues".

**61.** Despite securing a different position at a higher wage, PLAINTIFF was and continues to be very distraught that she was forced to leave a position she loved and excelled at because DEFENDANT could not properly intervene to address the harassment and retaliatory behavior occurring in her department despite several of her teammates also bringing forth their own grievances against MS. WATSON-SHERMAN to their attention. PLAINTIFF discovered that despite her team only having six other members many of them had never even been spoken to as part of HR's "thorough" investigations into PLAINTIFF's claims despite being cited as witnesses.

**62.** Due to the delay in the transfer PLAINTIFF'S new manager was on vacation and unavailable to train her. Rather than sit idle, PLAINTIFF volunteered to finish a project she had been working on implementing a new contracting database for Mercy Medical Group. PLAINTIFF'S participation in implementing the Cobblestone Database was beyond the scope of her duties but was a reason she was recognized for her performance by that Group in a letter of recognition July 2022.

**63.** Despite PLAINTIFF's treatment she continued to put the needs of the organization before her own. In July 2023, she met with her new mangaer, AMANDA JERNIGAN-SHAMAKOSKA and was presented with her Performance Evaluation that had been completed by MS. WATSON-SHERMAN. In it she provided biased and disparaging comments about the PLAINTIFF which PLAINTIFF perceived to be retaliatory in nature and she received a lower rating then she had ever received during the course of her

15

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

employment with DEFENDANT. PLAINTIFF declined to sign the review was not given an opportunity to refute it. The lower rating adversely impacted PLAINTIFF's merit increase and bonus.

64. PETIONER suffered damages as a result of all of these retaliatory actions, including past and future lost wages, emotional distress, and costs of bringing this action.

65. PLAINTIFF seeks to have the Court demand that the disparaging language be removed from her Performance Evaluation and that her rating be modified in accordance with her performance and her merit increase and past bonus be adjusted accordingly.

66. DEFENDANT intentionally violated DEFENDANT's rights under the ADA with malice or reckless indifference, and as a result and should be found liable for punitive damages.

## CLAIM THREE
## FRADULENT/NEGLIGENT MISREPRESENTATION
## CALIFORNIA CIVIL CODE § 1710

67. PLAINTIFF repeats and reaffirms paragraphs 1 through 66 here of, as if fully set forth herein.

68. On October 8, 2021, FRANCIE BARNETT met with PLAINTIFF to inform her that June Watson-Sherman was being promoted to Manager. During that conversation she informed PLAINTIFF that she would be giving her a spot bonus of $1000.00 for her hard work and stated she would be submitting a requisition for a Team Lead position for her after Human Resources lifted their blackout period on November 7, 2021. PLAINTIFF felt the bonus was meant to tie her over until this occurred.

69. Based on this belief, PLAINTIFF went above and beyond the duties of her job description, serving as a subject matter expert in meetings with

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

leadership, including but not limited to, leading a Sales Force implementation project, participating in a Provider Contracting Planning Meeting in the absence of her peers, and assisting June Watson-Sherman in the transition into her new role.

68. In a December 2, 2021, Google Chat, PLAINTIFF asked JUNE WATSON-SHERMAN for an update regarding the requisition. At first she denied knowledge but later conceded, "I believe based on what I know now, there were the best of intentions and that "the plan" had not yet been fully developed." PLAINTIFF stated she was disappointed as she was under the impression it was "a done deal".

69. PLAINTIFF continued to ask for updates during her 1-on-1 meetings with her manager and she continuously replied that she had no update. PLAINTIFF continued to provide assistance above and beyond her job description in preparation for this new role.

70. PLAINTIFF was finally informed in a March 31, 2022, 1-on-1 by JUNE WATSON-SHERMAN that they would not be moving forward.

71. As a result PLAINTIFF included a failure to promote in her grievance filed with Human Resources on May 19, 2022. PLAINTIFF also asked for Human Resources to provide her documentation that FRANCIE BARNETT attempted to submit for a requisition as she was promised. DEFENDANT did not provide her any evidence to that effect. PLAINTIFF was subsequently informed by Human Resources that her complaint was unsubstantiated because they do not consider it being a promise having been made if there was not an open requisition.

72. PLAINTIFF was not aware of what the internal policies are surrounding her promotion and took MS. BARNETT at her word that she would be promoted.

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

73. On September 15, 2022, when DEFENDANT met with PLAINTIFF to discuss their findings regarding their investigation they deferred the remedy sought for a failure to promote to MS. BARNETT citing it as an operational decision despite MS. BARNETT having not acted on her promise in the the previous months.

74. As of the date of this filing, MS. BARNETT has never met with PLAINTIFF to discuss this or any of the other remedies sought that were deferred to her by Human Resources which included one as simple as getting a written apology from MS. WATSON-SHERMAN for her treatment of PLAINTIFF when her mother was dying. [SEE EXHBIT 6 – HR Response]

75. In December 2022, PLAINTIFF became aware that a requisition had been filed for another Contract Specialist position on her team. An existing team member, who had just been hired in the previous year, but had personal relationships with individuals in leadership at DHMF, was promoted into that role. PLAINTIFF had participated in the interview process when the individual was initially hired and as such had seen their resume and that it did not have the prerequisite FIVE years of contracting experience required In fact, in a May 12, 2021 email, from TIFFANY TIDWELL, Director Human Resources to our supervisor JONNI HARTMAN, that was forwarded to the team with their resume, MS. TIDWELL states "he doesn't have contract experience".

76. PLAINTIFF'S concerns were raised with AC SAECHAO and JANE WELDON, MS. BARNETT'S supervisor, regarding this disparate treatment and PLAINTIFF's claims were dismisses as unsubstantiated despite evidence to the contrary.

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

77. MS. BARNETT misrepresented the fact that PLAINTIFF would be promoted. Based on this misrepresentation and spot bonus extended, PLAINTIFF was induced into continuing to work way beyond the scope of her job description.

**78.** PLAINTIFF was adversely impacted by her reliance on the facts misrepresented by MS. BARNETT in her statements and her subsequent actions. PLAINTIFF suffered damages as a result of DEFENDANT'S misrepresentations and seeks compensation including past and future lost wages and other compensatory and punitive damages as found appropriate by the court.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests judgment as follows:

A. Award PLAINTIFF for her past and future loss of wages and benefits, plus interest;

B. Award PLAINTIFF compensatory and punitive damages;

C. Order DEFENDANT to amend Performance Evaluation for fiscal year ending June 30, 2023, by removing all biased, derogatory, and untrue information and properly rating her performance and adjusting current salary and recent bonus appropriately in accordance with proper rating;

D. Order DEFENDANT to pay for treatment as recommended by Qualified Medical Examiner in their reporting;

E. Award to PLAINTIFF all costs and reasonable legal fees incurred in connection with this action; and

F. Grant PLAINTIFF such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

PLAINTIFF demands a trial by jury on all claims properly triable by a jury.

19

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

Dated:  December 17, 2023

Marietta, Georgia

Respectfully submitted,

Frances M. Santiago-Cruz, In Pro Se

1172 Cayman Lane SW

Marietta, Georgia

(916) 880-0621

Asmile4ya1@gmail.com

PLAINTIFF

EXHIBITS ATTACHED

1.  EEOC Charge of Discrimination Dated November 14, 2022. (3 Pages)

2.  EEOC Determination and Notice of Rights Dated September 21, 2023 (5 Pages)

3.  EEOC Agreement to Mediate Dated November 26, 2022 (1 Page)

4.  Qualified Medical Examiner's Report and Supplemental with Clarifying Letters sent by PLAINTIFF to Dr. Lopez dated December 1, 2023 (sans Exhibits Referenced) – (37 Pages)

5.  DHMF Position Statement to EEOC Dated May 5, 2023 (sans Exhibits) – (5 Pages)

6.  HR Response – Dated October 23, 2022 (9 Pages)

7.  Certification of Health Care Provider for Employee's Serious Health Condition under FMLA (3 Pages)

8.  Time Keeping Records for PLAINTIFF (7 Pages)

9.  Resolution to Request for Accommodation Dated December 15, 2022 (2 Pages)

10. Resolution to Request for Accommodation Dated November 15, 2022 (1 Pages)

IN RE FRANCES SANTIAGO-CRUZ, IN PRO SE vs DIGNITY HEALTH MEDICAL FOUNDATION

1

2

11. Email to Justin Williams dated November 21, 2022 (1 Page)

12. Email from Tiffany Tidwell dated May 2021 (2 Page)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC | 410-2023-00862 |
| | | and EEOC |

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| Ms. Frances M. Santiago-Cruz | (916) 880-0621 | 1975 |

Street Address

1172 Cayman Lane Southwest

MARIETTA, GA 30008

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Dignity Health Medical Foundation | 501+ Employees | (415) 438-5731 |

Street Address

3400 Data Drive

RNCHO CORDOVA, CA 95670

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address          City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Disability, Retaliation | 10/06/2022 | 10/06/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.  I was hired by the above-named employer on April 26, 2020, as a Contract Specialist. In May 2022, I filed a complaint against June Watson-Sherman, Manager, for harassment, FMLA Interference, retaliation, and hostile work environment. As a result of her harassment I requested a reasonable accommodation due to my disability whereby contact between us minimized. My request was approved. On October 6, 2022, I complained against Ms. Watson-Sherman for continued harassment and retaliation. During that conversation, I was notified my reasonable accommodation would be rescinded effective October 15, 2022. HR was immediately notified of her intent to rescind and did not intervene. No reason was given for the rescinding my accommodation any I had never been notified that the accommodation in any way created any undue harm for the company. As a result of their decision I was forced to use 3 days of bereavement then go on medical leave effective October 19, 2022. I subsequently filed for workers compensation October 20, 2022. Three medical professionals have indicated that I could return to work without restriction if my accommodation was reinstated but HR has refused to act and actively engage with me in an interactive process. To date, they have failed to properly address in writing the complaint filed in May 2022 and yet her behavior continues. II.  I believe that I have been discriminated against because of

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Ms. Frances M. Santiago-Cruz**<br><br>**11/14/2022**<br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE<br>*(month, day, year)* |

Exhibit 1
1/2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | EEOC | **410-2023-00862** |

|  |  | and EEOC |
|---|---|---|
| *State or local Agency, if any* |  |  |

my disability, and retaliated against for opposing an unlawful employment practice, by having my accommodation rescinded in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| **Digitally Signed By: Ms. Frances M. Santiago-Cruz** | SIGNATURE OF COMPLAINANT |
| **11/14/2022** | SUBSCRIBED   AND   SWORN   TO   BEFORE   ME   THIS   DATE |
|  | (*month, day, year*) |
| *Charging Party Signature* |  |

Exhibit 1
2 f 2

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/21/2023

**To:** Ms. Frances M. Santiago-Cruz
1172 Cayman Lane Southwest
Marietta, GA 30008
Charge No: 410-2023-00862

EEOC Representative and email:   Reinaldo M. Sanchez
Federal Investigator
reinaldo.sanchez@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2023-00862.

On behalf of the Commission,

Digitally Signed By: Darrell E. Graham
09/21/2023

Darrell E. Graham
District Director

Exhibit 2
1/5

**Cc:**
Erica Gruver
Senior Counsel
CommonSpirit Health
330 N Brand Blvd Ste 400
Glendale, CA 91203

Donatella Yelda
Paralegal
CommonSpirit Health
185 Berry St Ste 200 Lbby 2
San Francisco, CA 94107

Tamara Zappa
Paralegal
CommonSpirit Health
198 Inverness Dr W
Englewood, CO 80112

Please retain this notice for your records.

*Exhibit 2*
*2/5*

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request

*Exhibit 2*<br>*3 / 5*

identifying your request as a "FOIA Request" for Charge Number 410-2023-00862 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 410-2023-00862 to the District Director at Darrell E. Graham, 100 Alabama Street, SW Suite 4R30

Atlanta, GA 30303.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications)

Exhibit 2
4/5

**are not considered** in determining if the impairment substantially limits a major life activity.

✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Exhibit 2
5/5

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Atlanta District Office**
100 Alabama Street, SW, Suite 4R30
1-800-669-4000
Website: www.eeoc.gov

## AGREEMENT TO MEDIATE

CHARGE NUMBER: 410-2023-00862
FEPA NUMBER:

Charging Party: Ms. Frances M. Santiago-Cruz
Respondent: Dignity Health Medical Foundation

This is an agreement by the above parties to participate in mediation in the above referenced charge. The parties understand that mediation is a voluntary process, which may be terminated at any time. The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session. No one else may attend without the permission of the parties and the consent of the mediator(s).

The mediator(s) will not function as the representative of either party. However, the mediator(s) may assist the parties in crafting a settlement agreement. Each party acknowledges being advised to seek independent legal review prior to signing any settlement agreement. The parties acknowledge that they have received a copy of the Mediation Fact Sheet. The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.

The parties acknowledge that participation in the scheduled mediation does not constitute an admission by either party of any wrongdoing or of a violation of the laws enforced by EEOC. Furthermore, the Charging Party acknowledges that participation in the scheduled mediation by the Respondent does not commit the Respondent to providing a monetary resolution of the matter.

The parties recognize that mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement. The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

**Digitally Signed By: Ms. Frances M. Santiago-Cruz**

**11/26/2022**

---
Charging Party

---
**Ms. Frances M. Santiago-Cruz**
Charging Party Printed Name

---
**(916) 880-0621**
Charging Party Phone


Exhibit 3
1/1



**ALBERTO G. LOPEZ, M.D.**
Diplomate, American Board of Psychiatry and Neurology

---

April 7, 2023

*Confidential Psychiatric Report*
*For Medical-Legal Use Only*

Nicholas Lindman, Adjuster
Sedgwick CMS
P.O. Box 14573
Lexington, Kentucky  40512

Disability Evaluation Unit
320 W. 4th Street, 9th Floor
Los Angeles, California  90013-1954

## UNREPRESENTED PANEL QUALIFIED MEDICAL EVALUATION

| | |
|---|---|
| **Re:** | **SANTIAGO-CRUZ, Frances** |
| **Case #:** | **21929020** |
| **Date of Birth:** | **01/24/1975** |
| **Date of Injury:** | **05/19/2021** |
| **Employer:** | **Dignity Health** |
| **WCAB Case #:** | **Unassigned** |
| **Claim #:** | **4A2210NXT0D-0001** |

Dear Mr. Lindman and DEU:

Thank you very much for the opportunity to evaluate Frances Santiago-Cruz.  I had occasion to evaluate Ms. Frances Santiago-Cruz at 1111 Howe Avenue, Suite 240, Sacramento, California 95825, on April 7, 2023.

I personally took the examinee's history and performed a mental status examination without assistance.  I also reviewed the medical file as submitted.  The examinee was asked to complete psychological testing on the same date.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

*Exhibit 4*
*1/37*



Santiago-Cruz, Frances
April 7, 2023
Page 2

I explained to Ms. Frances Santiago-Cruz the purpose of this interview is for a psychiatric evaluation only. In this medical-legal setting, no confidentiality is assured. I am not the examinee's treating doctor, and no doctor-examinee relationship is established.

Under penalty of perjury, this report is submitted pursuant to 8 Cal Code of Regs. Section 9795 (b) and (c) as an ML-201 -95 -96, a Qualified Comprehensive Medical-Legal Evaluation.

Time spent face-to-face with the examinee was 2.5 hours. Total pages of records received and reviewed, 1,458. Declaration(s) enclosed at the end of report.

Psychological testing performed by the Physician/QHC for the evaluation services, including integration of patient data, interpretation or standardized test results, and clinical data, clinical decision making, and report, and interactive feedback to the patient, time spent was a **total of 3 hours, 1st hour billed at 96130 and 2 hours billed at 96131.**

Psychological administration and scoring by the Physician/QHC/Tech was a total of 30 minutes billed at 96136 and an additional 30 minutes billed at 96137. The self-administrated tests timing was not tracked due to this time is not included in the coding and which is not being billed for.

**IDENTIFICATION**

Ms. Frances Santiago-Cruz is a 48-year-old, divorced, left-handed, Puerto Rican-American lady. She resides with her 15-year-old son in the home they rent in Marietta, Georgia.

**OCCUPATIONAL HISTORY**

Ms. Santiago-Cruz began to work for Dignity Health Medical Foundation in April of 2020. Her work was that of contract specialist.

Her work was contracting physicians and other professionals including nurse practitioners and physician assistants.

The work itself she enjoyed. "I love my work and what I do." She received outstanding ratings. There were no disciplinary issues against her. Generally, she exceeded expectations on performance reviews. In fact, she was a top performer on her team.

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
2/37

Santiago-Cruz, Frances
April 7, 2023
Page 3

Eventually, she developed increasing problems with anxiety and depression. She was placed on accommodations for her mental health problems.

For her mounting health problems, she was taken off work by her primary care doctors, internal wellness therapies. She was taken off work from October 13, 2022, until her return December 9, 2022.

Accommodations are still in place. Specifically, she is not to have direct communication with the supervisor June Watson. Rather there must be an intermediary if there are any communications between Ms. Santiago-Cruz and Ms. Watson. When they are in meetings a third person much be there.

She remains on the job at this time. She does fear possibly losing her job and she remains anxious and depressed. She has filed an EOC complaint for retaliation and this is still in the process of being investigated, according to her.

There has also been a period of FMLA in order to care for her ailing mother who eventually died. This was November 2021 to April 2022.

With other employers, there have been no previous work injuries or Workers' Compensation claims.

She had worked for E Health where she was a manager. She managed the department for insurance producers. This was from March of 1999 until July of 2019. This ended when she resigned to take of her young granddaughter for some time, who was under her care from 2019 until she took the position with Dignity Health in 2020.

**HISTORY OF PRESENT ILLNESS**

Ms. Santiago-Cruz began to work for Dignity Health Medical Foundation in April of 2020. Her work was that of contract specialist.

As described in the "Past Medical and Psychiatric History," Ms. Santiago-Cruz has had a long history of problems with depression and anxiety. She suffered multiple traumas in her life including sexual trauma. She had been in intensive psychiatric treatment beginning in 2015. She was suicidal at that time and she was hospitalized at Heritage Oaks. After that, she entered into therapy with the psychologist Dr. Darwin and Dr. Reyes (the latter being a psychiatrist). Since that time, she was started on Wellbutrin which she has been taking ever since.

202305100JUUJJ

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

*Exhibit 4*
*3/37*



Santiago-Cruz, Frances
April 7, 2023
Page 4

Intermittently, she had taken Lexapro and Prozac as well.

She was diagnosed with ADHD as an adult and has been taking Adderall since that time.

Since she began to work for Dignity Health Medical Foundation, she describes a level of depression which has been chronic and lifelong. She was not actively suicidal. She was not experiencing trauma-related symptoms as such. She had experienced episodes of severe anxiety in the past, but not at that time.

She enjoyed her work. There were no disciplinary issues against her. Evaluations were always positive, according to her.

The work was always remote. Eventually, she was in the Sacramento area and later she moved to Georgia to be with family. In November of 2021, she began to work with a new supervisor June Watson. The director over her was Francine Bartlet. Within a few weeks of her taking over as manager, there was a distinct change in the work environment. Her leadership style involved micromanaging Ms. Santiago-Cruz. According to her, she displayed disparity in putting supervisees one against the other.

She went out on FMLA as her mother was very ill. Every time she tried to leave the office this was at the point of an interrogation. She even showed a video to June of her mother who was obviously very ill. She was out on an FMLA November 2021 to the mother's passing in April of 2022. Ms. Watson's response was very cold, simply telling Ms. Santiago-Cruz that not to forget her FMLA ended as soon as her mother died.

In May of 2022, Ms. Santiago-Cruz was experiencing increased anxiety with physical symptoms of rapid heartbeat, agitation, some diarrhea as well.

She consulted with HR vice president Tiffany and told her that she needed to transition to the Dignity Medical Group because she needed help. Her performance was being affected. She was having episodes of severe anxiety. She felt like she was "walking on egg shells."

It was suggested that she talk with HR which she did. They recommended a three-way meeting with June, her supervisor Francine, and Ms. Santiago-Cruz. The three decided they would work together to improve the environment.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261    Fax (916)920-2515

Exhibit 4
4/37



Santiago-Cruz, Frances
April 7, 2023
Page 5

This was not to happen. According to Ms. Santiago-Cruz, June just escalated after she went to human resources, apparently in retaliation.

This had a negative effect on her health. She lost weight. Her depression increased. She was given to bouts of tearfulness. She had difficulties with her sleep. There is no sleep apnea. When she complained to HR, she was told that an investigation was to take place.

As per her treating doctor, she was placed on accommodations June of 2022, where she should not have direct contact with her manager or the said contact should be minimized. Someone had to be present in meetings with them. Any communications needed to be cc'd to human resources.
Ms. Watson was not to speak directly to Ms. Santiago-Cruz.

In September of 2022, Ms. Santiago-Cruz was told that June was to be disciplined according to company policy, however, she was never told what this was. According to Ms. Santiago-Cruz, the retaliation continued. She was not given the opportunity to have an East Coast base schedule as were other workers. Her work was such that she was micromanaged and criticized for the most minor of faults. The accommodation was set to expire September 20, 2022. The director said that she could extend but not without a doctor's note. In October there was a meeting planned offsite. Again, this seemed to be an incident of retaliation. Ms. Santiago-Cruz was not invited to this meeting which included her peers.

Ms. Santiago-Cruz responded by going to HR and Francine which got her further retaliation and disparity of treatment. Francine was dismissive telling her simply that this was a "learning moment." To her, June's behavior was simply to be tolerated by administration. At that point, Ms. Francine responded that her accommodations would be canceled and she needed to report to her manager June directly. At that point, she felt hat she had no other choice but to go to a doctor and she was taken off work. She was taken off work as per the internal medicine doctor at the Willis Therapy Group, Dr. Kung, October 13, 2022, until her return December 19, 2022.

She was away from work nine weeks. She was never compensated for those weeks despite that she was placed on disability.

In the meantime, she filed an EOC complaint which alleged violation of her disability. She continues to await the result of that complaint.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
5/37



Santiago-Cruz, Frances
April 7, 2023
Page 6

She has returned to work and she is now reporting to June but only with others present. As before, communications have to be cc'd to human resources. She fears for her future on the job. She is very anxious on the job and fears making mistakes, although she is performing well. She has not yet undergone any psychotherapy explicitly addressing her work concerns. She has been told by her psychiatrist that medications will be adjusted, but they have not yet been begun.

**CURRENT COMPLAINTS**

At the time of this examination, the examinee complains of depression most days, crying, passive suicidal ideation, diminished self-esteem "I feel like a failure," "I wish I could disappear," poor sleep six hours per night, diminished appetite with a 40-pound weight loss, and generalized anxiety with episodes including rapid heartbeat, gastrointestinal distress, and shortness of breath.

**PAST MEDICAL AND PSYCHIATRIC HISTORY**

As far as internal medicine problems are concerned, she has approximately a three- or four-year history of iron deficiency anemia. She is maintained on iron.

She has a longstanding history of headaches dating to her teens. These are currently occurring approximately one time every few months. However, tension headaches occur every two weeks.

There has been a prior history of obesity. She underwent gastric bypass sleeve-type surgery in March of 2019. At that point, there was a 60-pound weight loss. Over the last year, there has been an addition unintended 40-pound weight loss.

By 2016, she was diagnosed with obstructive sleep apnea. However, this was before her surgery. Following her surgery, she believes she no longer has obstructive sleep apnea and does not require the apparatus.

At one point, Ms. Santiago-Cruz was diagnosed with hypothyroidism. However, she is no longer hypothyroid or requiring thyroid replacement.

In her mid-20s she had a diagnosis of attention deficit hyperactivity disorder and has been taking Adderall since that time.

202305188

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
6/37



Santiago-Cruz, Frances
April 7, 2023
Page 7

She is status post menopause and has undergone a hysterectomy. She has her ovaries. She experiences hot flashes.

She underwent an appendectomy July of 2001. She also had a therapeutic abortion in July of 2001. She does not regret that decision.

She has a long history of psychological and psychiatric treatment. This became more intense around March of 2015. There were several rounds of CBT therapy. She was seen by a psychiatrist Dr. Reyes at Kaiser.

She has been on Wellbutrin 300 mg since 2010 as per Dr. Reyes. She has been on Adderall 10 mg weekdays since her mid-20s.

Otherwise, her anxiety and expressed self-tension she takes Flexeril for that 5 mg as needed.

She us currently taking ferrous sulfate 125 mg per day.

For headaches, she takes ibuprofen 800 mg as needed. She has had some abdominal distress and takes omeprazole 40 mg.

In January of 2023, Ms. Santiago-Cruz had an ulcer. There was some bleeding then. This is no longer active, although she does have some abdominal pain.

Her family history is positive for one psychotic episode in a sister. However, this was brief and apparently related to exposure to cannabis.

As far as substances are concerned, Ms. Santiago-Cruz does not smoke or use tobacco products. She has an occasional cup of coffee but not regularly. Her drinking is described as light, one or two drinks per month at most.

She tried cannabis in college.

Over the last three years, she has been using cannabis medicinally for her headaches as needed.

She has never used any illicit drugs.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
7/37



Santiago-Cruz, Frances
April 7, 2023
Page 8

Ms. Santiago-Cruz had COVID on two occasions. This was in October of 2022 and then January of 2023. She did not require hospitalization. She fully recovered. She is fully vaccinated.

She has a significant prior history of abuse. She was actually assaulted when she was just 17 years of age. There was a physical assault in the year 2000. She also had a second sexual assault in February of 2001 which resulted in a pregnancy. She had an abortion.

There was some measure of abuse as she was growing up. She witnessed physical abuse of her father towards her mother. She has been estranged from her father after that.

She entered into treatment in 2001 after being a victim of a violent crime. She was in psychological treatment for a time. She became depressed by 2010 and has been on antidepressant essentially ever since then. She has been on Wellbutrin since 2015.

## SOCIAL HISTORY

Ms. Santiago-Cruz was born January 24, 1975, in Ponce, Puerto Rico. She came to the mainland when she was four. She was there through middle school. Her family then moved to Roseville where she attended high school. She was then at UCLA for four years before returning to the Sacramento area. She continued to reside there until August 2021. She has been living in Marietta, Georgia where she has family.

Her the pandemic, her work with Dignity Health has been remote.

She is the middle of three. She has two sisters. One sister is 49 and living nearby in Georgia. She has a good relationship with her. The other is 44 and living in Roseville. She is not especially close with her younger sister.

She grew up in an intact home. Her parents divorced when she was 18. They then remarried each other in 2001.

Her mother was a county clerk. She died in April of 2022. She died from a stroke.

Ms. Santiago-Cruz had a very good relationship with her mother.

202305188... Her father is 77 and living in Georgia as well. She is not as close with him. He had been a traffic manager and is now retired.

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

*Exhibit 4*
*8/37*



Santiago-Cruz, Frances
April 7, 2023
Page 9

There was abuse in her childhood. She remembers her father being physically abusive with her mother on occasions. He was also physically abusive with her one time pushing her down stairs and another time choking her. She did not have any treatment at that time for that.

She grew up speaking Spanish. She understands and does speak basic Spanish.

Ms. Santiago-Cruz graduated from high School in Roseville, California. She as a good student, above average. There was no learning disability. Much later in her 20s she was diagnosed with ADHD and has been maintained on Adderall.

She went to UCLA and graduated with a BA in 2002 in psychology.

Ms. Santiago-Cruz has never been arrested. She is not and has not been involved in gambling. She has not served in the military.

Ms. Santiago-Cruz has been married twice. She first married in 1987. This marriage lasted approximately two years because of physical abuse on his part.

From the marriage, she has a 24-year-old daughter. The daughter is a single mother of a 3-year-old girl. She is a high school graduate and is currently working. She lives in Sacramento. For a time, Ms. Santiago-Cruz took care of the granddaughter and had custody for a time. Her daughter had a tumultuous relationship with the father of her child. He had been abusive with her and she had a restraining order against him.

Ms. Santiago-Cruz has a 15-year-old boy. The father of the boy wanted her to have an abortion, but she decided against this. The boy resides with Ms. Santiago-Cruz. He is now described as doing very well. He is very active and he is very intelligent and accomplished student. He is overtly gay and Ms. Santiago-Cruz is supportive and accepting.

There was a second marriage from 2012 to 2015. He proved to be a very unreliable person who has subsequently married two more times. He is someone who did not want to work. There were no children from that relationship.

She has been dating off and on since then, but she does not have a current relationship.
She is working full time. She has become quite good about working out. She goes to the gym regularly. She makes it a point to walk five miles most days.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261  Fax (916)920-2515

Exhibit 4
9/37



Santiago-Cruz, Frances
April 7, 2023
Page 10

She is not currently socially involved.

Finances are stable. However, she did not get pain the time she was on leave which was October 13, to December 19, 2022.

Ms. Santiago-Cruz was raised Roman Catholic and this is the faith she continues to observe, but she does not go to church.

**MENTAL STATUS EXAMINATION**

Ms. Santiago-Cruz presents on time for the interview. The examinee presents as a tall, generally well-proportioned, slightly overweight, pleasant, cooperative, youthful, 48-year-old, Latina.

She appears younger than her stated age. Her grooming is good. She is causally but appropriately attired in jeans and a maroon sweater.

She has shoulder length curly black hair. Her grooming is good. She has done her fingernails. Her affects are intense. She is repeatedly overcome by anxiety and depression and becomes tearful.

Subjectively, she is "frustrated" as well as "anxious and depressed."

She is not in any physical pain during the course of the interview.

Her speech is clear and normal paced.

Her form of thought is intact. She is alert and well oriented. She can recall three out of three objects after five minutes, on short-term memory testing. Digit span is intact at five.

She denies any suicidal ideation. She denies any current psychotic symptomatologies.

**PSYCHOLOGICAL TESTING RESULTS**

I have had the opportunity to incorporate the April 7, 2023, report of results of psychological testing completed by Frances Santiago-Cruz. The battery of testing included the Minnesota Multiphasic Inventory-2, (MMPI-2), the Millon Clinical Multiaxial Inventory-III (MCMI-III), and the Symptom Checklist-90-R (SCL-90-R). These tests were scored by the National Computer Systems, Inc.

202305100

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261    Fax (916)920-2515

Exhibit 4
10/37

4A2210NXT0D0001



Santiago-Cruz, Frances
April 7, 2023
Page 11

*The Minnesota Multiphasic Inventory-2* is a psychological inventory designed to assess a number for the major patterns of personality and emotional disturbances. The test provides subjective scores and profiles determined from well-documented national norms that were re-standardized in 1989.

In terms of the MMPI-2, profile suggests she was open and cooperative. The resulting clinical and content scale profiles are valid and are probably a good indication of her present level of personality functioning.

Her profile suggests that she is reporting a number of vague physical complaints. She has a tendency to develop physical problems when she is under stress. Her medical history is likely to be characterized by excessive and vague physical complaints, weakness, and pain.

She may not now be greatly incapacitated by her physical symptoms. She tends to rely on hysterical defenses of denial and repression in the fact of conflict.

She views her physical health as failing and reports numerous somatic concerns. She feels that life is no longer worthwhile and that she is losing control of her thought processes. She acknowledged having suicidal thoughts recently.

Interpersonally, she is somewhat passive-dependent and demanding in relationships. Although she may at first appear skillful in handling social relationships, she tends to be rather immature, superficial, and unskilled with the opposite sex. She may use physical complaints to influence or manipulate other people.

She has an average interest in being with others and is not socially isolated or withdrawn. She meets and talks with other people with relative ease and is not overly anxious at social gatherings.

She reported a number of specific physical and psychological symptoms that need to be considered in any diagnostic formulation. Her personality make-up is consistent with a psychological basis to her symptoms.

Because her presenting problem is likely to be somatic in nature, she may not be very amenable to psychological treatment approaches. Her tendency to repress or deny problems makes her particularly resistant to the idea that psychological factors can influence her symptoms. She does not appear to be very motivated for psychological change at this time.

202305188

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

*Exhibit 4*
*11137*



Santiago-Cruz, Frances
April 7, 2023
Page 12

*The Millon Clinical Multiaxial Inventory-III* is a 175-item, true/false, self-report psychological inventory.  It contains scales clustered into two major groups that measure personality style, severe personality patterns, and clinical syndromes.

The MCMI-III suggests a distinct avoiding self-disclosure is evident in her response style.  On the basis of the test data, it may be reasonable to assume that the patient is exhibiting psychological dysfunction of mild to moderate severity.

Her profile suggests that denial, tension, and conformity are features that best characterize her.  Fearing criticism and derogation, she is incline to express self-blame when things go wrong.

Her marked self-doubts and need for a secure base may result in her seeking a safe partner or a supportive institution.  She has a tendency to be overconcerned with minor details, a preoccupation that may serve to distract her attention from her occasional feelings of minor anxiety and inadequacy.

Most notable is her inclination to exhibit an unusual adherence to social conventions and propriety, leading to a preference for polite, formal, dutiful, and correct personal relationships.  Also salient is her habit of constructing the world in terms of rules, regulations, time schedules, and social hierarchies, which results in her being unimaginative and becoming upset by unfamiliar events or customs.

Also worthy of attention is her tendency to view herself as efficient, meticulous, and industrious.  She appears to be suffering from an anxiety disorder.

Noteworthy responses included:
    "I can't seem to sleep, and wake up just as tired as when I went to bed."
    "I feel terribly depressed and sad much of the time now."
Testing suggested a generalized anxiety disorder in the context of obsessive-compulsive, paranoid, and histrionic personality features.

As far as treatment is concerned, it would be important to implement methods to ameliorate this examinee's current state of clinical anxiety, depressive hopelessness, and overall deterioration.

*The Symptom Checklist 90-R* is a multi-dimensional self-report inventory designed to assist as a screening instrument for psychopathology.

2023051003

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
12/37

5-10-2023                4A2210NXT0D0001                5120230510058033



Santiago-Cruz, Frances
April 7, 2023
Page 13

The symptom profile reveals a pattern and magnitude is not to be considered in the clinical range. Symptomatic distress levels are moderate to high-moderate for the respondent.

Testing suggested a sleep disturbance.

She endorsed "crying easily, feeling flue, worrying too much about things, and sleep that is restless or disturbed."

**REVIEW OF RECORDS**

An initial excerpting of the medical records was completed by Divya Muthukrishnan, who is trained in medical record excerpting. The excerpts and records were reviewed to define the relevant medical issues.

The following records were provided and reviewed:

1    10/20/2022 Exam/Progress Notes – Joseph Lavori, DO CC:  The patient presents today with gastrointestinal issues, suicidal thoughts, rapid weight loss, insomnia and depression after encounter at work.  Dx: 1) Anxiety and depression (F41.9, F32.A). 2) Discord in workplace (Z56.4).  Tx: 1) Psychiatry Referral Physician Referral See Referral Comment! Done:  10/20/2022 Ordered ASAP; For:  Anxiety and depression, SocHx: Discord in workplace; Ordered By: Lavori, Joseph. Performed: Due: 10/27/2022. Reason for referral: Evaluate and Treat. No medications were prescribed or dispensed for this encounter.  Discussion/summary - As discussed during visit, with plan to obtain the expert psychiatric treatment should improve, however if any worse she could find help with ER visit.  Treatment status: Returning for follow-up:  5 days if specialist not seen urgent psychiatrist referral. Work Status: Activity status - No work.

2    10/25/2022 Exam/Progress Notes – Sheila Omakpokpose, MD CC: The patient presents today with recheck: Anxiety, depression, weight loss, insomnia, diarrhea, R abdomen sharp pain.  Dx: 1) Anxiety and depression (F41.9, F32.A).  2) Discord in workplace (Z56.4).  Tx:  No medications were prescribed or dispensed for this encounter.  Activity status and restrictions - Treatment status:  Returning for follow-up: 1 week if specialist not seen.  Work Status: Activity status - Return to modified work/activity today. Return to modified work/activity if accommodation approved.  Work duration – Patient may work their entire shift. Minimal contact with manager. No one-on-one with manager.

20238518858033

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261    Fax (916)920-2515

Exhibit 4
13/37



Santiago-Cruz, Frances
April 7, 2023
Page 14

3      11/02/2022 Exam/Progress Notes – Joseph Lavori, DO CC:  The patient presents today
       with recheck - anxiety, depression, insomnia.  Dx:  1) Anxiety and depression (F41.9,
       F32.A).  2) Discord in workplace (Z56.4).  Tx:  1) Start: Escitalopram Oxalate 10 mg oral
       tablet, Take 1 tablet daily.  Rx By: Lavori, Joseph; Dispense:  20 days; #:  20 tablet; Refill:
       0; For:   Anxiety and depression;  DAW = N;  Verified Transmission to Concentra –
       Marietta; Last Updated By: System, SureScripts; 11/02/2022 11:26:36 AM.  None of the
       patient's  medications  for  this  encounter  were  dispensed  in  the  center.
       Discussion/summary - Noted she was on Lexapro, from 10 mg to 20 mg gradual
       increase, worked well; noted had EKG preop last year okay. Addend: Said on duloxetine
       and we prescribed #20, one 20 mg dr daily.  Treatment status:  Returning for follow-up:
       1 week if specialist not seen.  Psychiatrist followup (referred) pending auth.  CA state
       form scanned to insurer.  Work Status:  Activity status - Return to modified work/activity
       today.  Return to modified work/activity if accommodation approved.  Work duration –
       Patient may work their entire shift.  Minimal contact with manager.  No one-on-one with
       manager.

4      11/09/2022 Exam/Progress Notes – Joseph Lavori, DO CC:  The patient presents today
       with recheck to anxiety, depression, and insomnia.  Dx:  1) Anxiety and depression
       (F41.9, F32.A).  2) Discord in workplace (Z56.4).  Tx:  No medications were prescribed or
       dispensed for this encounter.   Activity status and restrictions -  Treatment status:
       Returning for follow-up: 12 days if specialist not seen.  Psychiatrist followup (referred)
       pending auth.  CA state form scanned to insurer.  Work Status:  Activity status - Return
       to modified work/activity today.  Return to modified work/activity if accommodation
       approved.  Work duration – Patient may work their entire shift.  Minimal contact with
       manager.  No one-on-one with manager.

5      11/18/2022 Exam/Progress Notes – Marnie Vanstrum, MD CC:  The patient presents
       today with recheck stress.  Self reported.  Dx:  1) Anxiety and depression (F41.9, F32.A).
       2) Discord in workplace (Z56.4).  Tx:  No medications were prescribed or dispensed for
       this encounter.  Activity status and restrictions - Treatment status:  Returning for follow-
       up:  1 week.  Minimal contact with manager.  No one-on-one contact with manager.
       Activity status:  Return to modified work/activity today.  Minimal contact with manager.
       No one-on-one personal contact with manager.  Work duration - Patient may work their
       entire shift.  Minimal contact with manager and no one-on-one contact with manager.

6      11/25/2022 Exam/Progress Notes – Christopher Behr, MD CC:  The patient presents
20230510058033 today with recheck: Stress.  Dx:  1) Anxiety and depression (F41.9, F32.A). 2) Discord in
       workplace (Z56.4).  Tx:  Will continue her Cymbalta and Wellbutrin and see her back in

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
14137



Santiago-Cruz, Frances
April 7, 2023
Page 15

one week. Hopefully her referral to counseling will come through in the meantime. No medications were prescribed or dispensed for this encounter. Activity status and restrictions - Treatment status: Returning for follow-up: One week. Work Status: Activity status - Off rest of shift, return to full activity on: 11/26/2022. Minimal contact with manager; no one on one contact with manager. Work duration - Patient may work their entire shift.

7       12/02/2022 Exam/Progress Notes – James Bailey, MD CC: The patient presents today with stress at work. Has anxiety, insomnia, and stomach issues. Self reported. Dx: 1) Anxiety and depression (F41.9, F32.A). 2) Discord in workplace (Z56.4). Tx: 1) Start: DULoxetine HCl - 20 mg oral capsule delayed release particles (Cymbalta) 1 capsule daily. Rx By: Bailey, James K; Dispense: 0 Days; #: 30 Capsule; Refill: 0; For: Anxiety and depression; DAW = N; Print Rx. Patient was given 30 day supply of duloxetine 20 mg daily.       No medications were prescribed or dispensed for this encounter. Discussion/summary - Medication injection was considered at this visit but deferred as: Oral medications are appropriate at this time. DME was considered at this visit but deferred as: It is not clinically necessary at this time. Imaging and other diagnostics were considered at this visit but deferred as: It is not clinically indicated at this time. Referral to specialist was considered at this visit but deferred as:    Continued conservative care is appropriate at this time. Activity status and restrictions - Treatment status: Returning for follow-up: One week. Work Status: Activity status - Off rest of shift, return to full activity on: 12/03/2022. Minimal contact with manager; no one on one contact with manager. Work duration - Patient may work their entire shift. Patient to have minimal contact with manager.

8       12/15/2022 Exam/Progress Notes – Joseph Lavori, DO CC: The patient presents today with recheck to stress and anxiety, pt states things have got worse no better at all. Self-reported. Dx: 1) Anxiety and depression (F41.9, F32.A). 2) Discord in workplace (Z56.4). Tx: 1) Start: DULoxetine HCl - 40 mg oral capsule delayed release particles; Take 1 capsule daily. Rx By: Lavori, Joseph; Dispense: 30 Days; #: 30 Capsule; Refill: 1; For: Anxiety and depression; DAW = N; Print Rx. None of the patient's medications for this encounter were dispensed in the center. Activity status and restrictions – Treatment status: Returning for follow-up: 2 weeks. Psychologist referral, expect more availability than psychiatrist (Allscripts entry 12-12). Work Status: Activity status: Return to full work/activity today. Minimal contact with manager, no one on one contact with manager. Work duration - Patient may work their entire shift. Patient to have minimal 20238518858833 contact with manager.

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
15137



Santiago-Cruz, Frances
April 7, 2023
Page 16

9  01/03/2023 Exam/Progress Notes – Joseph Lavori, DO CC: The patient presents today with stress and anxiety. Self reported. Dx: 1) Anxiety and depression (F41.9, F32.A). 2) Discord in workplace (Z56.4). Tx: No medications were prescribed or dispensed for this encounter. Activity status and restrictions – Treatment status: Returning for follow-up: 10 to 14 days. Psychologist referral, expect more availability than psychiatrist (Allscripts entry 12-12) now pending with adjuster and Calif form was sent. Work Status: Activity status: Return to full work/activity today. Minimal contact with manager, no one on one contact with manager. Work duration - Patient may work their entire shift. Patient to have minimal contact with manager.

10  01/17/2023 Exam/Progress Notes – Amanda Sahai, MD CC: The patient presents today with anxiety disorder. Self reported. Dx: 1) Discord in workplace (Z56.4). 2) Anxiety and depression (F41.9, F32.A). Tx: 1) Start: DULoxetine HCl – 20 mg oral capsule delayed release particles (Cymbalta); Take 1 capsule daily. Rx By: Sahai, Amanda; Dispense: 30 Days; #: 30 Capsule; Refill: 0; For: Anxiety and depression; DAW = N; Print Rx.  No medications were prescribed or dispensed for this encounter. Discussion/summary - Pt advised I will not refill her Klonopin. She is advised to follow up with her mental health provider she was seeing previously for refills of her medication. Activity status and restrictions - Treatment status: Returning for follow-up: Follow up with Mental Health specialist. Work Status: Activity status - Return to full work/activity today. Work duration - Patient may work their entire shift. Please accommodate employee by minimizing exposure to manager.

11  Letter of February 28, 2023, of Nicholas Lindman.

12  Attestation of Sterling Fletcher dated March 3, 2023. "I declare the total page count provided to the physician is 1,408."

13  Concentra dated January 17, 2023. "Patient presents today with anxiety disorder self-reported. Patient states she still has anxiety dealing with her manager. She has not been seen by a psychiatry and awaiting approval. Patient requesting refill on Klonopin which she has been taking previously. She was on Wellbutrin as well. Cymbalta was added and she needs a refill." The diagnoses included anxiety, depression, stress, insomnia, irritable and mood swings, no claustrophobia, suicidal ideation. "There was discord at the workplace, anxiety and depression (F41.9 and F32.1). Start duloxetine 20 mg."

28230518858833

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261  Fax (916)920-2515

Exhibit 4
14/37



Santiago-Cruz, Frances
April 7, 2023
Page 17

14   Concentra note of January 3, 2023.  Stress, anxiety self-reported.  Depression and discord in the workplace.

15   Concentra Service Note of December 15, 2022. "The patient presents today for check of stress and anxiety."  The diagnoses included anxiety and depression and discord in the workplace.   "France Santiago-Cruz has significant difficulties with the physical requirements of her job."

16   Concentra note dated November 18, 2022.  Started on Cymbalta added to the Wellbutrin.

17   Concentra note dated November 9, 2022, per Joseph Lavori, D.O.  Anxiety disorder unspecified.

18   Note of October 25, 2022, diagnosis of anxiety unspecified, by Shelia Omakpokpose. "Ms. Santiago-Cruz has significant difficulties with her physical requirements for her job."

19   Dignity Health Note dated October 20, 2022. "History Present Illness: Has a longstanding problem, many months of depressed and anxious mood symptoms exacerbated by disagreements, patient describes unfair and unprofessional activities by her manager.  Has had worsened chronic symptoms of anxiety, depression since bad interaction with the manager, worsened as of the current dated.  This followed the death of the patient's mother in April.  Under the care of Dr. Kung Carmichael.  Has had FMLA that involved no contact with problem manager."

ACTIVITIES OF DAILY LIVING questionnaire
(filled out by the applicant on March 31, 2023)

With respect to the question:

"Do you have any difficulty with sleeping?"  "My sleep is slightly disturbed (less than one hour sleepless) since my injury."

"With regard to sexual activities since and because of your injury?"  "It is much less frequent because of my injury."

20230510058033 "With regard to your pain most of the time?"  "I have no pain most of the time."

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
17/37



Santiago-Cruz, Frances
April 7, 2023
Page 18

"How much do your injury and/or pain interfere with your ability to engage in recreational activities?" "Some or a little of the time."

"How much does your injury and/or pain interfere with concentrating and thinking?" "A lot or most of the time."

"How much has your injury and/or pain caused emotional distress and depression, irritability or anxiety?" "A lot or most of the time (moderate depression, irritability, or anxiety from the injury or discomfort)."

**EPWORTH SLEEPINESS SCALE**

The applicant completed the Epworth Sleepiness Scale on March 31, 2023. Her score was that of 5, indicating slight daytime somnolence.

**DIAGNOSES - DSM-5**

| | |
|---|---|
| 300.40/F34.1 | Persistent Depressive Disorder |
| 300.00/F41.9 | Unspecified Anxiety Disorder |
| 314.01/F90.9 | Unspecified Attention Deficit Hyperactivity Disorder |
| | Maladaptive Personality Traits, rule out borderline personality disorder |

**COMMENTS AND CONCLUSIONS**

I had occasion to evaluate from my Sacramento, California office Ms. Frances Santiago-Cruz on April 7, 2023. It was a distinct honor and pleasure to do so as a Qualified Medical Examiner.

Ms. Santiago-Cruz is a 48-year-old, divorced, Puerto Rican-American female.

She has a significant prior history of abuse.

She was sexually assaulted when she was just 17 years of age. There was a physical assault in the year 2000. She also had a second sexual assault in February of 2001 which resulted in a pregnancy. She underwent an abortion.

There was also. some measure of abuse as she was growing up. She witnessed physical abuse of her father towards her mother. She has been estranged from her father after that.

20230510

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261  Fax (916)920-2515

Exhibit 34
18/37



Santiago-Cruz, Frances
April 7, 2023
Page 19

Ms. Santiago-Cruz entered into treatment in 2001 as a victim of a violent crime. She was in psychological treatment for a time. She became depressed by 2010 and has been on antidepressants essentially ever since then. She has been on Wellbutrin since 2015.

She does not have persistent trauma-related symptoms. For a time, there was continuing anxiety with episodes of severe anxiety. She was given to easy startling. She was significantly depressed. The anxiety symptoms were no longer present however and she was struggling with a lesser degree of depression and was no longer suicidal when she went to work for Dignity Health Medical Foundation on April 26, 2020. She was taking Wellbutrin at that time as well as Adderall for her diagnosis of attention deficit hyperactivity disorder.

Ms. Santiago-Cruz developed problems on the job November 2021 when she came under the supervision of the manager Ms. June Watson, who had been promoted, having previously been a peer. She was subjected to what she describes as unrelenting micro-management. June was pitting workers against one another. She had to go out on FMLA as her mother was ill and eventually died. Every time she tried to leave her office, there was an interrogation to the point that she threw up her hands.

Ms. Santiago-Cruz was out on FMLA from November of 2021 until her mother's passing in April of 2022. She showed June a video her mother, who was very ill and having problems with her breathing. As the mother was very close to passing, June was extremely insensitive and told Ms. Santiago-Cruz to remember that her FMLA would be over as soon as her mother expired.

During the course of her work, Ms. Santiago-Cruz developed episodes of severe anxiety which included rapid heartbeat, chest pain, and diarrhea. She felt like she was "walking on egg shells." A meeting was held in May of 2022 involving June, the director Francine, and Ms. Santiago-Cruz. However, the conflictual situation on the job was not resolved. Ms. Watson's behavior escalated and Ms. Santiago-Cruz felt she was being retaliated against. She developed health problems. She filed an EOC complaint. An investigation was undertaken and Ms. Santiago-Cruz believes it is still pending.

She was taken off work by her treating doctor, October 13, 2022, until her return December 19, 2022.

Ms. Santiago-Cruz filed a grievance, feeling that she had not been given appropriate accommodations because of her history of anxiety and depression.

20238510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
19137



Santiago-Cruz, Frances
April 7, 2023
Page 20

She remains on the job. She is allowed to have contact with June only if the manager is present. Any e-mails to Ms. Santiago-Cruz must be cc'd to HR. There is apparently an agreement on the part of an administration that June was inappropriate. As a result of the investigation, it was determined that June was "disciplined in accordance with company policy," but the nature of that discipline was not disclosed to Ms. Santiago-Cruz. It was concluded, however, that June had been retaliatory.

Ms. Santiago-Cruz had not been given the opportunity to work on an East Coast schedule but had to observe the West Coast schedule. (Ms. Santiago-Cruz was eventually working remotely from Georgia where she had relatives.)

There was a meeting held offsite which she would have ordinarily been invited to, yet June did not invite her to it. The invitation was sent to her peers in such a way that it would not appear in her calendar. Ms. Santiago-Cruz reported this n as retaliation.

The director was dismissive and she was told that it was "a learning moment." She was taken off work October to December of 2022. Accommodations have now been re-instated. An EOC complaint is in process.

Ms. Santiago-Cruz is improved, but remains symptomatic.

Work restrictions are in place regarding communication between Ms. Santiago-Cruz and Ms. June Watson. Other parties have to be present during meetings and all communications with e-mails are to be cc'd to HR

**Subjective Complaints:** At the time of this examination, the examinee complains of depression most days, crying, passive suicidal ideation, diminished self-esteem "I feel like a failure," "I wish I could disappear," poor sleep six hours per night, diminished appetite with a 40-pound weight loss, and generalized anxiety with episodes including rapid heartbeat, gastrointestinal distress, and shortness of breath.

**Objectively,** the examinee presents as quite intense and agitated. She is repeatedly tearful.

**Diagnosis:** The examinee suffers from a lengthy depression. She has been depressed for many years off and on throughout much of her life. There is a diagnosis of depression with prior history of suicidal ideation and hospitalization for suicidality. Ms. Santiago-Cruz was depressed at the time she began to work with Dignity Health Medical Foundation, although the depression was exacerbated. This condition is a Persistent Depressive Disorder.

20230510050055

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
20/37

Santiago-Cruz, Frances
April 7, 2023
Page 21

Similarly, Ms. Santiago-Cruz has had problems with anxiety related to her trauma with hypervigilance, hypersensitivity to sounds, and nightmares. She developed increased anxiety during the course of her work with Dignity Health Foundation which included chest pressure, palpitations, and shortness of breath. This is an Anxiety Unspecified with some panic-like symptomatology.

As per her history, in her mid-20s Ms. Santiago-Cruz was tested and found to have Attention Deficit Hyperactivity Disorder.

She has a history of tumultuous relationships and an inordinate fear of rejection. She does display borderline personality features, although I would not make a separate personality diagnosis.

Psychological testing is valid and interpretable. Testing suggested a generalized anxiety disorder which she does have on clinical grounds. She is in need of treatment.

**Causation:** The ADHD is preexistent and nonindustrial, by history. Her Persistent Depressive Disorder was also preexistent and nonindustrial. She does have a history of anxiety in the past with treatment for the same with some trauma-related symptoms. These conditions are all nonindustrial.

However, the Persistent Depressive Disorder was exacerbated and the Anxiety Disorder was worsened in the course of her work with Dignity Health Medical Foundation and particularly by the treatment of her supervisor Ms. June Watson.

Her maladaptive personality traits with borderline features are preexistent and nonindustrial and the result of life-long personality characteristics.

**Disability:** As far as disability is concerned, there was a period of Total Temporary Psychiatric disability when she was taken off work by her treating doctor Dr. Chin-Wai Kung. There has been a period of Total Temporary Psychiatric Disability from October 13, 2022, until her return December 19, 2022.

She is back on the job. She remains very symptomatic and more so than at the time of her prior baseline. She has not yet undergone psychotherapy to help her adjust to her work and its stresses. She should not be considered Permanent and Stationary.

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
21/37



Santiago-Cruz, Frances
April 7, 2023
Page 22

**Apportionment:** Apportionment will need to be considered as per Labor Codes 4663 and 4664 once she is Permanent and Stationary.

**Restrictions:** Ms. Santiago-Cruz has restrictions not to meet independently without others being present with her supervisor Ms. June Watson. This is indicated and helpful.

***Rolda* Analysis:** Ms. Santiago-Cruz experienced worsening of her anxiety and depression which was clearly the result of the actions of her supervisor June Watson. These actions rise to the 35-40% threshold of the cause of the worsening of her symptoms.

Ms. Santiago-Cruz believes the actions of her supervisor Ms. Santiago-Cruz to be abusive, excessive, and discriminatory. Whether these actions represent good-faith personnel actions or not is left to the ultimate Trier of Fact.

However, it should be noted that Ms. Santiago-Cruz has never been formally disciplined. Her evaluations have always been very good.

**Treatment:** As far as treatment is concerned, she has been on medication which has helped with her preexisting anxiety and depression, as well as continuing symptoms. She should be monitored by her psychiatrist on a monthly basis. There have been no psychotherapeutic interventions for her work issues to date. I recommend Ms. Santiago-Cruz enter into psychotherapy 15 to 20 sessions. Hopefully she will improve her symptoms will return to their baseline and she will be able to move on with her life.

Once this treatment has been completed, I would be happy to reexamine Ms. Santiago-Cruz, and I request to do so.

All of my opinions are within reasonable medical probability. The above opinions are given based on my 43 years of experience evaluating and treating psychiatric patients.

**COMPLIANCE DISCLOSURE STATEMENT**

I certify that I took the complete history from the claimant, conducted the examination, reviewed all available medical records, and composed and drafted the conclusions of this report. The conclusions and opinions within this report are solely mine. I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to

202305106

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
22/37



Santiago-Cruz, Frances
April 7, 2023
Page 23

be true. In accordance with Labor Code Section 5703(a) (2), there has not been a violation of Labor Code Section 139.3, and the contents of the report are true and correct to the best of my knowledge. This statement is made under penalty of perjury.

Pursuant to 8 Cal. Code Regs. Section 49.2-49.9, I have complied with the requirement for face-to-face time with the client in this evaluation. If necessary, I have discussed apportionment in the body of this report. If I have assigned disability caused by factors other than the industrial injury, that level of disability constitutes the apportionment. The ratio of nonindustrial disability, if any, to all described disability represents my best medical judgment of the percentage of disability caused by the industrial injury and the percentage of disability caused by other factors, as defined in Labor Code Sections 4663 and 4664.

Sincerely,

Alberto G. Lopez, M.D., M.P.H.
Diplomate, American Board of Psychiatry and Neurology
Clinical Professor (Emeritus), Department of Psychiatry
        University of California, San Francisco
Distinguished Life Fellow, American Psychiatric Association
Assistant Clinical Professor, Department of Psychiatry
        University of California Davis School of Medicine

Date Report Signed: May 4, 2023          County: San Francisco

AGL/lz:04/08/2023

_TO ALL RECIPIENTS OF THIS REPORT:_

_THIS IS A PSYCHIATRIC REPORT AND SHOULD BE TREATED WITH CONFIDENTIALITY._

_ALTHOUGH REPORTS ARE GENERALLY NOT CONFIDENTIAL WITHIN THE WORKERS' COMPENSATION SYSTEM, PSYCHIATRIC MATERIAL COULD BE EASILY MISUNDERSTOOD AND DISTORTED. SUCH MISUNDERSTANDINGS MAY BE VERY DERIMENTAL TO A PATIENT'S PSYCHIATRIC WELL-BEING. FOR PATIENTS WHO POSE A SUICIDAL OR HOMICIDAL THREAT, DISCLOSURE OF SUCH MATERIAL MAY BE DANGEROUS TO THEIR WELL-BEING OR TO THAT OF OTHERS. ADDITIONALLY, THE ENCLOSED MATERIAL COULD INTERFERE WITH ANY ONGOING PSYTHOTHERAPY._

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
23/37



Santiago-Cruz, Frances
April 7, 2023
Page 24

_FOR THE ABOVE-MENTIONED REASON, THIS REPORT SHOULD NOT BE GIVEN TO THE PATIENT UNLESS IT HAS FIRST BEEN
DISCUSSED WITH THE PATIENT BY ME OR BY A TREATING THERAPIST. IT IS PREFERALBE THAT ASPECTS OF THIS REPORT
ONLY BE DISCUSSED BY MENTAL HEALTH PROFESSIONALS, IF NECESSARY. PERSONS GIVING THIS REPORT TO THE PATIENT
MUST SERIOUSLY CONSIDER THE ABOVE CAUTION AND THUS ASSUME RESPONSIBILITY OF ANY CONSEQUENCES TO THE
PATIENT THAT THIS REPORT MAY PRODUCE._

20230510058033

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261    Fax (916)920-2515

Exhibit 4
24/37

**ALBERTO G. LOPEZ, M.D.**
**Diplomate, American Board of Psychiatry and Neurology**

May 22, 2023

Confidential Psychiatric Report<br>For Medical-Legal Use Only

Carin C. Kaeser, Esquire
Kaeser Hull, LLP
965 University Avenue, Suite 200
Sacramento, California  95825

Nicholas Lindman, Adjuster
Sedgwick CMS
P.O. Box 14573
Lexington, Kentucky  40512

**SUPPLEMENTAL REPORT**

| | |
|---|---|
| **Re:** | **SANTIAGO-CRUZ, Frances** |
| **Case #:** | **22036664** |
| **Date of Birth:** | **01/24/1975** |
| **Date of Injury:** | **05/19/2021** |
| **Employer:** | **Dignity Health** |
| **WCAB Case #:** | **Unassigned** |
| **Claim #:** | **4A2210NXT0D-0001** |

To All Interested Parties:

> Under penalty of perjury, this report is submitted pursuant to 8 Cal Code of Regulations Section 9795 (b) and (c) as an ML-203 -95 -96; Qualified Supplemental Medical-Legal Evaluation.
>
> Total pages of records received and reviewed, 5.  Declaration enclosed at the end of report.

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
25/37

Santiago-Cruz, Frances
May 22, 2023
Page 2

I previously evaluated Mr. Santiago-Cruz on April 7, 2023, and I refer you to the report of that date for my full recommendations and impressions.

I have now received the letter dated May 19, 2023. "Labor Code section 3208.3(b)(1) requires an employee to demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined to establish a psychiatric injury. In your report, you cited *Rolda* and found that Ms. Santiago-Cruz experienced worsening of her anxiety as the result of the alleged actions of her supervisor. The *Rolda* case applies a 35-40% threshold only if the defendant is claiming a personnel action as an affirmative defense. The *Rolda* standard has therefore been incorrectly applied in this case."

I refer to *Rolda* only to be thorough in my report. The conclusion is that indeed this is not applicable in the case of Ms. Santiago-Cruz.

"In your report on pages 18-20, you listed actions taken by her supervisor which Ms. Santiago-Cruz informed you that she considered harassing and/or retaliatory. However, should the trier of fact find the following is true, and/or the supervisor's actions were not harassing or retaliatory, would you agree that the actual events of employment are not the predominant cause as to all causes combined (51% threshold) of Ms. Santiago-Cruz' psychiatric condition?"

As to whether these actions were good-faith personnel actions, of course, I defer to the Trier of Fact. Should they not be found to be harassing or retaliatory, but rather in good faith, then the actual events would not be predominant to all causes combined (51%) of Ms. Santiago-Cruz' psychiatric conditions.

You then go on to list the items:

- **Ms. Santiago-Cruz moved to Georgia without notifying her employer. No east coast employees who work for a department based in California are permitted to work east coast hours.**

- **Ms. Santiago-Cruz' supervisor reasonably requested information from Ms. Santiago-Cruz regarding the time she needed to be off work to visit her ailing mother to ensure her work was appropriately covered by another employee.**

11010 White Rock Road, Suite 120, Rancho Cordova, CA 95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
26/37

Santiago-Cruz, Frances
May 22, 2023
Page 3

- Ms. Santiago-Cruz' supervisor sent a department wide email about the company policy about the proper use of PTO.  Ms. Santiago-Cruz did not receive an email addressed only to her about the PTO policy.

- The planned offsite meeting to which Ms. Santiago-Cruz was not invited in October 2022 was held in California and Ms. Santiago-Cruz lives in Georgia.

- The planned offsite meeting was hosted by her supervisor with whom Ms. Santiago-Cruz adamantly claims she requires minimal contact.

- There is no requirement Ms. Santiago-Cruz' supervisor must cc emails directed to Ms. Santiago-Cruz to Human Resources.

- There is no prohibition from Ms. Santiago-Cruz having contact with her supervisor without another person present, despite her assertions to the contrary.

- Ms. Santiago-Cruz did not provide a doctor's note to extend the accommodations past September 30, 2022 so the employer unofficially extended the accommodation so she could obtain that note.

- There is no substantial medical evidence that Ms. Santiago-Cruz lost weight, had increased anxiety, rapid heartbeat, agitation, and diarrhea due to her interactions with her supervisor.

Thank you very much for reviewing these events.

I hope that I have answered the questions regarding Ms. Santiago-Cruz in my report.  When I saw her, of course, she was not permanent and stationary.  If so requested, I would be happy to reexamine her at her earliest convenience, and request to do so.  At that time, I will review with her each and every of these items.

*I certify that I reviewed all available medical records and composed and drafted the conclusions of this report. The conclusions and opinions within this report are solely mine.  I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others.  As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.  In accordance with Labor Code Section 5703(a), there has not been a violation of Labor Code Section 139.3, and the contents of the report are true and correct to the best of my knowledge.  This statement is made under penalty of perjury.*

11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670
(800)458-1261   Fax (916)920-2515

Exhibit 4
27/37

Santiago-Cruz, Frances
May 22, 2023
Page 4

Sincerely,

Alberto G. Lopez, M.D., M.P.H.
Diplomate, American Board of Psychiatry and Neurology
Clinical Professor (Emeritus), Department of Psychiatry
     University of California, San Francisco
Distinguished Life Fellow, American Psychiatric Association
Assistant Clinical Professor, Department of Psychiatry
     University of California Davis School of Medicine

Date Report Signed:  July 6, 2023          County:  San Francisco

AGL:lz:06/18/2023

### TO ALL RECIPIENTS OF THIS REPORT:

THIS IS A PSYCHIATRIC REPORT AND SHOULD BE TREATED WITH CONFIDENTIALITY.

ALTHOUGH REPORTS ARE GENERALLY NOT CONFIDENTIAL WITHIN THE WORKERS' COMPENSATION SYSTEM, PSYCHIATRIC MATERIAL COULD BE EASILY MISUNDERSTOOD AND DISTORTED. SUCH MISUNDERSTANDINGS MAY BE VERY DERIMENTAL TO A PATIENT'S PSYCHIATRIC WELL-BEING. FOR PATIENTS WHO POSE A SUICIDAL OR HOMICIDAL THREAT, DISCLOSURE OF SUCH MATERIAL MAY BE DANGEROUS TO THEIR WELL-BEING OR TO THAT OF OTHERS. ADDITIONALLY, THE ENCLOSED MATERIAL COULD INTERFERE WITH ANY ONGOING PSYTHOTHERAPY.

FOR THE ABOVE-MENTIONED REASON, THIS REPORT SHOULD NOT BE GIVEN TO THE PATIENT UNLESS IT HAS FIRST BEEN DISCUSSED WITH THE PATIENT BY ME OR BY A TREATING THERAPIST. IT IS PREFERALBE THAT ASPECTS OF THIS REPORT ONLY BE DISCUSSED BY MENTAL HEALTH PROFESSIONALS, IF NECESSARY. PERSONS GIVING THIS REPORT TO THE PATIENT MUST SERIOUSLY CONSIDER THE ABOVE CAUTION AND THUS ASSUME RESPONSIBILITY OF ANY CONSEQUENCES TO THE PATIENT THAT THIS REPORT MAY PRODUCE.

**11010 White Rock Road, Suite 120, Rancho Cordova, CA  95670**
**(800)458-1261    Fax (916)920-2515**

Exhibit 4
28/37

December 1, 2023


Alberto G. Lopez, M.D.
Diplomate, American Board of Psychiatry and Neurology
11010 White Rock Road, Suite 120
Rancho Cordova, California 95670


RE:   Unrepresented Panel Qualified Medical Evaluation & Supplemental Report for Frances Santiago-Cruz

|  |  |
|---|---|
| Case #: | 22036664 |
| Date of Birth: | 01/24/1975 |
| Date of Injury: | 05/19/2021 |
| Date of Evaluation: | 04/07/2023 |
| Employer: | Dignity Health |
| WCAB Case #: | Not Assigned |
| Claim #: | 4A2210NXT0D-0001 |


Dear Mr. Lopez,

I am writing in regards to the Psychiatric Report and subsequent Supplemental Report that you completed after my QME Evaluation held April 7, 2023. I have recently been informally notified via email on November 21, 2023, by Carin Kaesar, Esq., who represents both Dignity Health and Sedgwick CMS, that despite the findings and recommendations that you provided in your reports that my claim remains denied and that I will need to be deposed before they are able to move forward. While I hoped that your report would have been sufficient to allow me to resolve this matter amicably without further escalation it now appears that is not the case. I am in the process of submitting the required paperwork for adjudication of claim and a declaration of readiness to proceed with a hearing. As a result, I am reaching out to clarify some items found in your report that are inaccurate and address the "Trier of Facts" that you were asked to review for your supplemental report as you will likely be asked to testify and I want to ensure you have the correct information.

The following are corrections/clarifications for items found in your initial report.

PAGE 3 Paragraph 2
I was taken off work by my primary care doctors at *Internal Medicine & Wellness Therapies* as a result of my employer failing to maintain my reasonable accommodation. [See Exhibit 1]. My last day of work was October 13, 2023. I was off work from October 14, 2023 until they reinstated my accommodation on *December 19, 2022.*

PAGE 3 – Paragraph 4
I filed a complaint with *EEOC*. [Update: EEOC issued a Right to Sue Notice on September 21, 2022]

PAGE 3 – Paragraph 9
*Therapist: Lisa Erwin* (don't believe she is a doctor/psychologist) and *Psychiatrist* Dr. Frank Reyes.

Exhibit 4
29/37

PAGE 4 – Paragraph 3
Note: Despite not experiencing any psychiatric issues when my employment commenced my disability was disclosed to my employer in my new hire paperwork. [Exhibit 2]

PAGE 4 - Paragraph 5
I moved to Georgia to be near family in *August 2021*. The director over me was *Francie Barnett.*

Page 5 – Paragraph 3
I was placed on an accommodation in *July 2022. Francie (Director) or Jonni Hartman (Supervisor) needed to be cc'd on communications – not HR.* [Exhibit 3]

Page 5 – Paragraph 4
The issue was not that I was unable to have an East Coast based schedule. The understanding when I was approved to work from Georgia is that I had to maintain California work hours and that in accordance to Common Spirit Health Remote Worker Agreement & Policy [Exhibit 4] if I was asked to come to California at the request of my manager/supervisor I would do so at my own expense. The issue that I presented was that I requested that my schedule be modified while I was on intermittent FMLA (Nov 2021-April 2022) as I was working 8:30-5pm PST (11:30a – 8:00p) which made me unable to visit my mother during her visitation hours. By adjusting my schedule, even on a few days (note I was exempt/salary and on intermittent leave), it would have avoided the interrogations and difficulties I was encountering when I attempted to leave. Our jobs are asynchronous and work load is not driven by a set schedule. At the time there were individuals under her leadership hat worked as early as 6:30am PST and being approved for a similar schedule would have avoided my issues. In the midst of my investigation, after my mother passed, on June 6, 2022, I inadvertently discovered that on May 5, 2022, she had modified the schedule of a teammate (AH) that had just been hired in November 2021. She never disclosed the change to the rest of the team despite sending emails (May 5, 2022, May 12, 2022) to the team suggesting we were all working core hours of 8:30a – 5:00p. This disparate treatment was brought to the attention of HR/Francie as part of my investigation which then resulted in all of our schedules being changed. My schedule was changed to begin at 7:00a which had this occurred sooner would have avoided the FMLA interference I encountered but by then my mom had already passed.

The accommodation was set to expire *September 30, 2022. My director said she spoke to HR and said she could extend my accommodation unofficially without a note. I was never asked to provide a note.* Nonetheless after Francie informed me she would not maintain my accommodation a note was provided by my PCP on October 11, 2022 insisting my accommodation be maintained or I would need to be put on FMLA. [Exhibit 5]

Page 5 – Paragraph 5
Please change Francine to *Francie*.  Please change Willis Therapy Group to *Internal Medicine and Wellness Therapy.*

Page 6 – Paragraph 1
She has returned to work and she is now reporting to June but only with others present *or I had permission to record zoom calls if no one was available*. [Technically throughout this entire process in Dignity's system I continued to report to June biggest difference when I returned in December is that she began to attend my 1-on-1s]. As referenced above Page 5 – Paragraph 3 – It was Francie (director) or Jonni (supervisor) copied on emails/chats **NOT** HR.

Page 7 – Paragraph 3
There were several rounds of **DBT** therapy.

Page 19 – Paragraph 5
Please change Francine to *Francie*. Please change EOC to *EEOC.*

Exhibit 4
30/37

Page 19 – Paragraph 6
Last day in office was October 13, 2022.

Page 19 – Paragraph 7
I filed a grievance because my director chose not to extend my accommodation because of her history of anxiety and depression that was being exasperated by my treatment at work after I engaged in the protected activity of filing a good-faith claim of retaliation. Accommodations that had been in place prior to October 13, 2022 were appropriate and effective in mitigating the symptoms of my condition.

Page 20 – Paragraph 1
*Note: As of June 12, 2023, I am no longer in that position as I feel I was forced to leave a job I loved because the working conditions were not improving.*
I was allowed to have contact with June only if **others** were present or I could record the interaction via Zoom if others were not available. (I never had to defer to recording a meeting but it was part of my accommodation **after** I returned on December 19, 2022. Again Francie (director) or Jonni (supervisor) were copied on all communications with June – HR was NOT involved.

Page 20 – Paragraph 3
***The following is copied, in its entirety, from comments made above regarding Page 5 – Paragraph 4 that also discussed my schedule.*** "The issue was not that I was unable to have an East Coast based schedule. The understanding when I was approved to work from Georgia is that I had to maintain California work hours and that in accordance to Common Spirit Health Remote Worker Agreement & Policy [Exhibit 4] if I was asked to come to California at the request of my manager/supervisor I would do so at my own expense. The issue that I presented was that I requested that my schedule be modified while I was on intermittent FMLA (Nov 2021-April 2022) as I was working 8:30-5pm PST (11:30a – 8:00p) which made me unable to visit my mother during her visitation hours. By adjusting my schedule, even on a few days (note I was exempt/salary and on intermittent leave), it would have avoided the interrogations and difficulties I was encountering when I attempted to leave. Our jobs are asynchronous and work load is not driven by a set schedule. At the time there were individuals under her leadership hat worked as early as 6:30am PST and being approved for a similar schedule would have avoided my issues. In the midst of my investigation, after my mother passed, on June 6, 2022, I inadvertently discovered that on May 5, 2022, she had modified the schedule of a teammate (AH) that had just been hired in November 2021. She never disclosed the change to the rest of the team despite sending emails (May 5, 2022, May 12, 2022) to the team suggesting we were all working core hours of 8:30a – 5:00p. This disparate treatment was brought to the attention of HR/Francie as part of my investigation which then resulted in all of our schedules being changed. My schedule was changed to begin at 7:00a which had this occurred sooner would have avoided the FMLA interference I encountered but by then my mom had already passed."

Page 20 – Paragraph 3/4
I made a good faith claim of retaliation based on the fact that I was excluded from a team event without reason. Although I live in Georgia, I had always been included, to the best of my knowledge, to team events and even had attended one on September 24, 2021, at Olive Garden just one month after having relocated. [Exhibit 6] I also attended an event held on April 29, 2022, virtually but that was because my mom had just passed weeks before so I could not travel. Please keep in mind I had just been told by HR on September 15, 2022, that they had found as part of their investigation that she had retaliated against me and to immediately report any incidents that occurred. When I did so not only was my director dismissive she informed me my accommodation would not be extended which forced my doctor to put me on leave until December 19, 2022. Seven medical professionals, of which six were from Concentra, all repeatedly indicated I could return to work without restriction if my accommodations were maintained my employer did not ask and Sedgwick also did not intervene which in my opinion adds to their liability of paying for the time I was forced to be off unnecessarily.


Exhibit 4
31/37

Page 20 – Paragraph 6
All communications with email/chat were cc'd to Francie and/or Jonni NOT HR.

Page 21 – Paragraph 8
Please change Dr. Chin Wai Kung to **Chien Wei Kung, PA-C.** Total Temporary Psychiatric Disability from **October 14, 2022** to December 19, 2022. [October 13, 2022 was my last day at work.]

I also wanted to briefly provide feedback on the "Trier of Facts" you were asked to review as part of your Supplemental Report. I know you requested to reexamine me at my earliest convenience to allow you to discuss their statements with me but they did not schedule a follow-up with you. Therefore, I wanted an opportunity to address them and provide my feedback which can be found it italics below.

**Ms. Santiago-Cruz moved to Georgia without notifying her employer. No east coast employees who work for a department based in California are permitted to work east coast hours.**

*On July 12, 2021 at 7:46pm, I sent a formal request in writing via email to Francie Barnett and Jonni Hartman (interim manager at the time) asking if I could relocate to Georgia. This request was approved. I am attaching a copy of an email from Jonni Hartman dated July 16, 2021 at 3:32pm [Exhibit 7] that she provided me to use when seeking housing in Georgia that verified that I would be maintaining my position after I relocated. This contradicts their "fact" that was provided stating that I relocated without notifying my employer. As I clarified above (See Comments under Page 5 – Paragraph 4 and Page 20 – Paragraph 3 above) I was granted permission to relocate under the agreement that I would work California hours. However, I was not allowed to adjust my hours (8:30am-5:00pm PST), while on FMLA or despite being salary, so I could visit my ailing mother without the issues I was encountering using my FMLA despite members of our CR team working as early as 6:30am PST.*

**Ms. Santiago-Cruz' supervisor reasonably requested information from Ms. Santiago-Cruz regarding the time she needed to be off work to visit her ailing mother to ensure her work was appropriately covered by another employee.**

*In the grievance filed with HR one of my largest complaints stemmed from the fact that June's requests were not reasonable. First and foremost I take great pride in my work as demonstrated by my evaluations, spot bonuses received, and a letter of recognition and as such I would never leave work without ensuring proper coverage for my work. Her requests were not reasonable and I stand by statements in your initial report that they were interrogations that left me defeated and prompted me to just not leave. I provided evidence to both HR and Francie that showed that June was not familiar with any of our systems or had not submitted any contracts during the period in question and I truly believe that she was resistant in allowing me to be out of the office, despite my FMLA, because it shielded her from it being discovered that she did not know the job. In fact, I provided evidence to HR that the first contract request she submitted took place in October 2022 just days before I was forced to go on leave. This left my team members with no support to unnecessarily have to cover my workload when I was forced to go on FMLA due to their failure to maintain my accommodation. Please keep in mind I was not seeking entire days to be off to care for my mother. This was often in an attempt to take a few hours to visit her during their visitation hours. This would have been avoided had my schedule been allowed to change or I felt I had some flexibility. HR was even provided a copy of a text message sent to June on January 28, 2022 at 5:57pm with a video of my mother having difficulty breathing that I felt I had to provide to justify my leaving the office despite my FMLA. This is not okay.*

**Ms. Santiago-Cruz' supervisor sent a department wide email about the company policy about the proper use of PTO. Ms. Santiago-Cruz did not receive an email addressed only to her about the PTO policy.**

Exhibit 4
32/37

*In addition to departmental emails sent out regarding the PTO policy I received several emails directly and was spoken to directly (in the presence of Francie) about the PTO Policy. Please note this is not a dispute about trying to take PTO this was in regards to logging in while on PTO to address a work matter as an exempt, salaried employee. Prior to the filing of my investigation, I was never questioned if I attended to a matter I deemed urgent while on PTO if it was necessary. However, after I reported that June had charged me for 3 days bereavement despite knowing I worked (more than 4 hours but outside "core business" hours – as I was in Puerto Rico coordinating and attending my mother's funeral) that this became a problem. Note as part of their investigation this time was credited back to me and was used beginning October 14, 2022 before my LOA was forced to begin.*

**The planned offsite meeting to which Ms. Santiago-Cruz was not invited in October 2022 was in California and Ms. Santiago-Cruz.**

*The agreement reached in July 2021 before relocating to Georgia included an understanding that I could be asked to return to California by my supervisor for an event or training and if asked I would do so at my own expense. This is also in accordance with CSH Remote Worker's Agreement [Exhibit 4] that states "the employee will report to the employer's work location at the request of his or her supervisor". It has been communicated to HR repeatedly that I deemed June's exclusion of me from the team event to be retaliatory based not only on those understandings but also because to the best of my knowledge it had never occurred previously. I attended an event at Olive Garden in Citrus Heights, California on September 24, 2021 [Exhibit 6], after I relocated to Georgia and was virtually attended a team event held at Zocolo's April 29, 2022. I could not attend in person as it was shortly after my mother's death but nonetheless I was not excluded from the invitations as I was in October 2022. Not only was I excluded the invite was sent in such a manner that if I looked at my teammates' calendars it would not appear and it was seem they were free. Given these facts and the claim that had just been investigated by HR, I believe any reasonable person would feel that being excluded from a team event to be disparate treatment and retaliatory. Regardless I should not have been retaliated against and told my ADA reasonable accommodation would not be extended for engaging in the protected activity of filing a good faith claim of retaliation and disparate treatment.*

**There is no requirement Ms. Santiago-Cruz' supervisor must cc emails directed to Ms. Santiago-Cruz to Human Resources.**

*This was clarified in my previous statements above but this is true. There was no requirement under my reasonable accommodation to copy human resources on my communications with my supervisor. Francie Barnett and/or Jonni Hartman were to be copied and there was not to be direct communication from June.*

**Ms. Santiago-Cruz did not provide a doctor's note to extend the accommodation past September 30, 2022 so the employer unofficially extended the accommodation so that she could obtain that note.**

*This is false. On September 15, 2022, during my meeting with HR, where the results of their investigation were reviewed I was advised that many of the remedies sought in my investigation, including reporting to someone else, were organizational decisions that would need to be addressed with Francie Barnett. I immediately contacted her following the meeting request a time to discuss the open items. She informed me that she was unable to make those decisions without discussing them with her supervisor, Jane Weldon. Upon speaking to her she would circle back before my accommodation ended. On September 28, 2022 I was contacted by Francie via chat where she referenced the need to meet with me but was unavailable and that she was asking HR if they have to officially extend it. On a call at 1:11pm September 30, 2022 I was informed by Francie that she could "unofficially" extend it without the need of updated paperwork. Even referencing the need to "unofficially" extend it show she was aware of the need for the accommodation give the circumstances. I was never asked for a note. Regardless a note was provided to them from my PCP prior to my last day in the office that stated that he would need to put me on a LOA if my reasonable accommodation was not maintained. They had this documentation*



Exhibit 4
33/37

prior to the filing of my Worker's Comp Claim and chose not to act. Further, Jill Latsuzek the HR Business Partner handling my investigation provide me Worker's Comp paperwork as early as July 2022 [Exhibit 8]. This demonstrates that my employer was aware of the symptoms I was experiencing based on my working conditions. I did not file a claim at that time because the reasonable accommodation was effective in mitigating my symptoms. This claim resulted directly as a result of them removing my accommodation knowing I was still dealing with work related issues.

Additionally, as you saw in reviewing all the Concentra provider notes it was stated that I could return to work without restriction simply if my accommodation was reinstated. Sedgwick did not push to have this occur nor did my employer act during this period until the accommodation was finally reinstated after 9 weeks on December 19. 2023. As a final note, the previous accommodations that had been approved had all been resolved within 24 hours of engaging in the interactive process – not nine weeks. This was done to the team's top performer who in 2022 as captured in my review was assigned to support the contracting needs of medical groups that accounted for 67.2% of all the active Providers employed by DHMF. This volume of work had to unnecessarily be absorbed by my teammates due to my leave. [EXHIBIT 9]

**There is no substantial medical evidence that Ms. Santiago-Cruz lost weight, had increased anxiety, rapid heartbeat, agitation, and diarrhea due to her interactions with her supervisor.**

I do not understand how they are defining substantial but these and similar symptoms were referenced in my medical notes not only from Concentra but in my prior appointments with my PCP. It does not appear, based on your report, that you were provided my PCP records for review. A qualified medical professional would not have provided the required documentation for my reasonable accommodation or subsequent FMLA without evidence that I was symptomatic. During the period in question it is routinely referenced that my condition fell under ICD-10-CM Z56.4 essentially attributing my symptoms to work. I am also attaching a copy of a letter from my PCP dated April 5, 2023, that was provided to my HR that further attributed the exasperation of my condition to work and requested my accommodations be maintained indefinitely or assistance in possible reassignment. [EXHIBIT 10] Luckily, I was able to start a new position at a subsidiary of Dignity Health, Woodland Memorial Hospital, in June 2023, and I am no longer in need of an accommodation in my new role. The lack of resolution in this matter, particularly continuing to feel like I am having my integrity questioned and my feelings dismissed has made healing extremely difficult and I do hope that I am afforded the therapy you recommended in your report when a positive determination is made of this claim.

Finally, I am attaching a copy of a document entitled HR RESPONSE – OCTOBER 23, 2022, that was sent to Justin Williams, Director of HR for Dignity Health that references many of the circumstances that led to the filing of this claim that I reference above in the event you would like further clarity [EXHIBIT 11].

As I explained during your evaluation, I loved my job and I was an exemplary employee and merely went to HR in May 2022, begging for help because my condition was being exasperated under June's leadership. I spoke to at least 8 individuals in HR asking for help as I only wanted to be able to do my job effectively without the issues she was causing. I deserved to stand up for myself and I am disheartened despite my numerous attempts to try to resolve this amicably, not only did I have to leave a job that I loved due to their failure to act but I still feel my concerns are being dismissed. I am deeply troubled that I now have to escalate matters to seek the resolution I deserve.

I want to thank you for taking the time to evaluate me and given the circumstances I wanted to make sure that I provided you some clarity into some of the items that were not correctly captured in your report so you are informed in the event you are asked to testify. Please note that I will be providing a copy of this letter and attachments to the Worker's Comp Board when I submit the necessary paperwork to request a hearing. If you have any questions or need additional information, please let me know.


Exhibit 4
34/37

Respectfully,

*Frances Santiago-Cruz*

Frances Santiago-Cruz
916-880-0621

cc:     Carin Kaesar, Esq. [carin@kaeserhull.com]
        supplemental@examworks.com

## LIST OF EXHIBITS

1.  Certification of Health Care Provider for Employee's Serious Health Condition under FMLA dated October 11, 2022 – Pages 4 and 5 both indicate that I was put on leave due to a failure to provide accommodations
2.  Verification my disability was disclosed to my employer prior to my date of hire.
3.  Copy Resolution of Request for Accommodation dated July 29, 2022 that details the terms of my accommodation and demonstrates it was my Director and/or my Supervisor that were to be cc'd on communications not HR.
4.  Copy of Common Spirit Health's Remote Worker's Agreement and Policy
5.  Letter from PCP dated October 11, 2022, stating I could continue to work if my accommodation was maintained.
6.  Calendar invite showing team event at Olive Garden in September 2021 – This provides evidence that I had attended a team offsite in California after I had relocated to Georgia and as such it would be reasonable to understand why I would have found having been excluded from the Team Get Together that was scheduled for October 6, 2022 to be retaliatory.
7.  Email from Jonni Hartman dated July 16, 2021, demonstrating that Dignity was aware and approved my relocation to Georgia in August 2021 and that it was not done without their knowledge.
8.  Email from Jill Latuszek dated July 19, 2022, showing Worker's Comp paperwork was provided as early as July but was not utilized until accommodation was rescinded.
9.  Copy of Performance Review to demonstrate I was a top performer and had no disciplinary issues during the period in question.
10. Letter from PCP dated April 5, 2023, requesting my accommodation be extended indefinitely or recommending assistance with reassignment. It also attributes my symptoms as work related.
11. HR RESPONSE provided to Justin Williams, HR Director on October 23, 2023 detailing my grievances that resulted in Worker's Comp and EEOC claims being filed.

Exhibit 4
35/37

December 7, 2023


Alberto G. Lopez, M.D.
Diplomate, American Board of Psychiatry and Neurology
11010 White Rock Road, Suite 120
Rancho Cordova, California 95670


RE:     Unrepresented Panel Qualified Medical Evaluation & Supplemental Report for Frances Santiago-Cruz

| | |
|---|---|
| Case #: | 22036664 |
| Date of Birth: | 01/24/1975 |
| Date of Injury: | 05/19/2021 |
| Date of Evaluation: | 04/07/2023 |
| Employer: | Dignity Health |
| WCAB Case #: | Not Assigned |
| Claim #: | 4A2210NXT0D-0001 |


Dear Mr. Lopez,

As I prepared to mail my previous letter to you dated December 1, 2023, I realized that I inadvertently failed to comment on one of the "Trier of Facts" referenced by Ms. Kaesar in her request for a Supplemental Report. To avoid the risk of potentially being accused of that being intentional, I wanted to follow-up with you on that item.

**The planned offsite meeting was hosted by her supervisor with whom Ms. Santiago-Cruz adamantly claims she requires minimal contact.**

*My ultimate desire when I brought my grievances to HR, and was one of the resolutions I requested, as shown in HR Response – October 23, 2022, exhibit provided you with my initial letter, was simply to have "a positive working environment that is free of harassing behavior where I can once again be empowered to provide the quality work product this organization is accustomed to receiving from me [EXHIBIT 11] not to have the matter escalate in this manner.*

*One of the elements of my supervisor's behavior that I felt largely contributed to a hostile work environment was her disparate treatment between my teammates and I, as demonstrated by my exclusion from the offsite, and the fractures it was causing within the team when she behaved in this manner. Excluding team members from team off-sites does not foster a health working environment.  My desire to not be excluded and feel ostracized simply for having brought my grievances to the attention of HR far outweighed any concern from having contact with my supervisor during an outing. Regardless I should have been given the option to choose whether I wished to participate.*

*I believe I mentioned this during my evaluation but it does not appear to have been captured in your reports but thee predominate reason I sought to have minimal contact with my supervisor is because I simply did not trust her based on our interactions that led to the filing of my initial grievance. What she would say to me privately and how she treated me privately, especially as it related to my intermittent FMLA when my mom was ill, was completely different from what she said in front of others or in her written communications. As I mentioned during my evaluation, when I attempted to find solutions to be able to utilize my FMLA, like modifying my schedule, she would not budge or when I attempted to use my*

1 | P a g e

Exhibit 4
36/37

*hours she would interrogate me or make me feel uncomfortable for leaving. Yet in the presence of others or in emails she would state how she understood I was having a difficult time and she was there to support me in any manner possible. That type of gaslighting largely contributed to negative impacts on my mental health and the exasperation of my conditions. Having another individual(s) present to serve witness to those interactions I feel would make her unable to act in that manner and the accommodation was effective in that regard. Therefore participating in an offsite with other team members present would not have been an issue because there were others present and in no way changes the fact that I adamantly did not want direct contact with her.*

*I truly believe my supervisor was intentional about excluding me from the offsite and knew what she was doing was wrong. After I notified Francie on October 6, 2022 of my desire to file a claim of retaliation and disparate treatment against June she spoke to her and in what I feel was a true display of consciousness of guilt, she ended up NOT attending the offsite in question, that she had scheduled for that night.*

I hope this information provides you some insight as to why I deemed being excluded from a team off-site as retaliatory. It had nothing to do with my genuine desire to have minimal contact with my supervisor.

If you have any questions or need additional information, please let me know.

Respectfully,

Frances Santiago-Cruz

**Frances Santiago-Cruz**
**916-880-0621**

cc:     Carin Kaesar, Esq. [carin@kaeserhull.com]

Exhibit 4
37/37



May 4, 2023

***VIA EEOC RESPONDENT PORTAL ONLY***

Ms. Terry Tollefson
U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303

RE: *Frances M. Santiago-Cruz v. Dignity Health Medical Foundation*
EEOC Number: 410-2023-00862

## CONFIDENTIAL POSITION STATEMENT

Dear Ms. Tollefson,

Please accept this letter as Dignity Health Medical Foundation's ("Respondent") Position Statement submitted in response to the above-referenced Charge of Discrimination (the "Charge"), wherein Frances M. Santiago-Cruz ("Claimant") alleges disability discrimination and retaliation.

Please be advised that if a fact-finding conference is held with respect to this Charge, Respondent may wish to rely upon additional facts and materials not set forth in this Position Statement. Furthermore, since the investigation of the U.S. Equal Employment Opportunity Commission into this matter is ongoing and has not yet been completed, Respondent also reserves the right to supplement this submission with additional information.[1]

## STATEMENT OF FACTS

**A.   Dignity Health Medical Foundation**

Dignity Health Medical Foundation is a not-for-profit organization providing award-winning, patient-centered health care in a variety of areas, including primary and specialty care, diagnostic imaging, vision, occupational health, urgent care, and behavioral health. Respondent's 130+ clinics across the state of California deliver high quality, patient-centric care with an emphasis on humankindness. Through affiliations with Dignity Health hospitals and joint ventures and partnerships, Respondent offers a state-of-the-art healthcare delivery system in the communities it serves.

---

[1] This Position Statement should not be construed in any manner to preclude Respondent from asserting any additional legal defenses or theory in opposition to the allegations in the Charge. Respondent reserves the right to object to the admissibility of this submission in any subsequent litigation. This Position Statement is confidential to the extent permitted by applicable law, and we request that you not release this response to any person or entity without the written consent of the undersigned. Documents provided are confidential business records of Respondent. They are provided in cooperation with this Charge and with the understanding that the documents will be used only for duly authorized purposes and will not be further used or disclosed except as required by law. Respondent is not and does not intend to suggest that by any disclosure it is waiving any privilege or confidentiality otherwise applicable to any disclosed documents. Further, this letter and all the attached exhibits are hereby designated as confidential commercial/proprietary information and are being provided on a confidential basis under all applicable FOIA Exemptions, including but not limited to, FOIA Exemption 4, 5 U.S.C. § 552(b)(4) and 45 C.F.R. § 5.65, and similar provisions under applicable state law for confidential/proprietary information. We request that notice be given to Office of Legal Counsel, CommonSpirit Health, under Executive Order 12600 (June 23, 1987) and similar state law provisions Public Records Law, in the event the government determines that such materials or information may be required to be disclosed to a FOIA and/or Public Records Law requester.

Exhibit 5
1 / 5

Respondent is an Equal Opportunity/Affirmative Action Employer committed to a diverse and inclusive workforce. (See **Exhibit 1 – Equal Employment Opportunity Policy**). Respondent provides equal opportunity in all aspects of employment, pay, promotion or place of work regardless of race, color, creed, national origin, sex, sexual orientation, disability, age or other protected bases as required by law and takes all allegations of unlawful discrimination seriously. Respondent also prohibits retaliation of any kind. (See **Exhibit 2 – No Retaliation Policy**).

### B. Claimant's Employment with Respondent

On or around April 26, 2020, Claimant began working for Respondent as a Provider Contract Specialist, where she was responsible for the coordination and ongoing support of Employment Agreements for Physicians and Advanced Practice Providers. Claimant served as a liaison between internal and external personnel at various levels to ensure the contracting lifecycle was managed in an efficient and timely manner and in compliance with internal policies and regulatory requirements. (See **Exhibit 3 – Job Description**). Claimant worked in the Provider Contract Specialist role for her entire employment with Respondent.

As outlined below, all of Claimant's complaints were investigated and addressed. Additionally, Respondent engaged in the interactive process with Claimant at every possible opportunity in order to review and agree upon reasonable accommodations that were acceptable to all parties. From July 29, 2022 to present, Respondent has provided Claimant with multiple accommodations which are still in place.

On March 23, 2023, Claimant applied for and obtained a Contract Specialist Position at Woodland Healthcare, a dba of Dignity Community Care, which is a higher paying position. Claimant's date of transfer is on or about May 29, 2023.

### C. Response to Specific Allegations

*Claimant Alleges* "In May 2022, I filed a complaint against June Watson-Sherman, Manager, for harassment, FMLA Interference, retaliation, and hostile work environment."

As a preliminary matter, on February 16, 2020, Respondent hired Ms. June Watson-Sherman as a Community Physician Recruitment Contracts Coordinator. Ms. Watson-Sherman and Claimant were in similar positions and worked well together. While colleagues at the same level, Claimant did not complain about any unlawful harassment by Ms. Watson-Sherman or complain of a hostile work environment. On or about November 7, 2021, Ms. Watson-Sherman was promoted to a management position, Manager Physician Contracts, and became Claimant's immediate supervisor.

On May 19, 2022, Ms. Stephanie McIntosh, Human Resources Business Partner, received a complaint by Claimant against Ms. Watson-Sherman. Claimant alleged FMLA interference, because her supervisor asked for advance notice of Claimant's use of FMLA when feasible, and unfair treatment. (See **Exhibit 4 – Letter to Claimant**). Claimant's alleged unfair treatment was based on her "calling out things that I don't feel are appropriate" – *not based on any alleged protected class*. Ms. McIntosh conducted an investigation into the allegations raised by Claimant, and the allegations were unsubstantiated. *(Id.)* On June 27, 2022, Ms. McIntosh held a video call with Claimant to inform her of the outcome of the investigation. During the course of the investigation by Ms. McIntosh, Claimant made additional claims of retaliation and hostile work environment but did not provide any specific details or events. Ms. McIntosh requested details from Claimant, but Claimant was slow to respond or did not respond with specific information that could be investigated. On July 5, 2022, Ms. McIntosh sent Claimant a letter regarding the outcome of the investigation and reminded Claimant to provide a statement regarding her additional allegations for review and investigation. (See **Exhibit 4**).

Exhibit 5
2/5

Frances M. Santiago-Cruz v. Dignity Health Med Foundation
EEOC Number: 410-2023-00862
CONFIDENTIAL POSITION STATEMENT
May 4, 2023
Page 3

Claimant's additional claims of retaliation and hostile work environment were investigated by Jill Latuszek, Sr. HR Business Partner in another department, because Claimant alleged Ms. McIntosh's investigation was inadequate. On July 19, 2022, Ms. Latuszek interviewed Claimant about her allegations. On September 15, 2022, Ms. Latuszek held a video call with Claimant and Ms. Francie Barnett, System Director Physician Enterprise Professional Services, to close out the investigation and provide Claimant with the outcome. Claimant was informed which of her claims were unsubstantiated, and for any other issues she brought forward, Respondent informed Claimant the issues were addressed consistent with Respondent's policies and no further information would be shared due to the confidential nature of any such action.

Almost all of Claimant's complaints were unsubstantiated. However, during the investigation, Respondent discovered Claimant had immediately informed Ms. Watson-Sherman that she had filed a complaint with HR against Ms. Watson-Sherman, and in response, Ms. Watson-Sherman asked Claimant about her complaint. Ms. Watson-Sherman was counseled about this interaction.

*__Claimant Alleges__ "As a result of her harassment I requested a reasonable accommodation due to my disability whereby contact between us minimized. My request was approved."*

During the course of the investigation by Ms. Latuszek, Claimant requested an accommodation to have a "buffer" put in place to minimize contact with Ms. Watson-Sherman. (See __Exhibit 5 - Email dated 7-21-22__). On July 29, 2022, Respondent approved a temporary, 30-day accommodation in which Claimant's contact with Ms. Watson-Sherman was minimized (i.e., no one-on-one meetings). This temporary accommodation did not confirm Claimant's allegations were founded but, rather, the accommodation was to allow Claimant to continue working during the course of the investigation. (See __Exhibit 6 - Signed Temporary Accommodation.__)

Respondent extended this accommodation to September 30, 2022, so Claimant could continue working during the course of the investigation. (See __Exhibit 7 - Email__ and __Exhibit 8 - Signed Temporary Accommodation Extension__). At this time, Claimant did not provide Respondent with any further documentation indicating a re-examination had occurred or that her accommodations should be continued beyond the original medical certification time period of 8 weeks (or September 30, 2022). (See __Exhibit 9 – Physician's Note__). Indeed, Claimant's signed accommodation resolutions are clear that the accommodations were temporary.

__Claimant Alleges__ *"On October 6, 2022, I complained against Ms. Watson-Sherman for continued harassment and retaliation. During that conversation, I was notified my reasonable accommodation would be rescinded effective October 15, 2022. HR was immediately notified of her intent to rescind and did not intervene. No reason was given for the rescinding my accommodation any I had never been notified that the accommodation in any way created any undue harm for the company."*

Claimant did not submit a new complaint in October 2022, rather, she continued to bring up incidents that had already been investigated and addressed by Respondent. As outlined above, Respondent accommodated Claimant based on the September 30, 2022 date in her doctor's note. On or around this date, Claimant asked Ms. Barnett, in a one-on-one meeting, to continue her accommodations. Ms. Barnett advised Claimant she did not have any documentation for an extension and that Claimant would need to submit updated medical documentation. Ms. Barnett did not rescind Claimant's accommodation, and, in fact, Respondent has never rescinded Claimant's accommodation.

On or about October 11, 2022, Claimant provided another note from her treating physician indicating it would be in Claimant's best interest for her health to be out of work until January 1, 2023, if accommodations could not be offered. (See __Exhibit 10 – Physician's Note.__) The note from the treating physician did not indicate any symptoms, limitations, or restrictions for the Claimant. Claimant went out on FMLA leave before Respondent received any clarification surrounding the October 11, 2022 note.

Frances M. Santiago-Cruz v. Dignity Health Med Foundation
EEOC Number: 410-2023-00862
CONFIDENTIAL POSITION STATEMENT
May 4, 2023
Page 4

Nonetheless, Respondent engaged in the interactive process with Claimant. On or about October 15, 2022, Respondent offered, and Claimant accepted, a 90 day extension of her accommodation. Respondent has continued to accommodate Claimant to the present day. (See **Exhibits 11 & 12 – Temporary Accommodation Extensions.**)

> **Claimant Alleges** "*As a result of their decision I was forced to use 3 days of bereavement then go on medical leave effective October 19, 2022. I subsequently filed for workers compensation October 20, 2022.*"

Respondent's Bereavement Policy provides time off with pay to support employees who wish to take time off due to the death of an immediate family member. Time off and pay for bereavement is calculated based on the employee's full time equivalent (FTE), and shall equal what the employee would otherwise receive for one week in time and pay. Thus, forty hours of bereavement time off and pay is available to a 1.0 FTE employee. The policy allows bereavement time off with pay to be split but must be utilized in no more than two increments within ninety (90) days of the death. (See **Exhibit 13 – Bereavement Policy.**) Claimant took 32 hours leave from April 11-16, 2022, and another 8 hours on May 9, 2022, totaling 40 hours, for the passing of her mother. On or about October 10, 2023, Claimant admitted to Respondent, via email, that she would take bereavement leave in lieu of PTO until her leave of absence started. On or about October 14, 2023, Claimant entered another 24 hours of bereavement leave into Respondent's time and attendance scheduling system. The system does not require any documentation, it is up to the employee to follow the bereavement guidelines and inform her manager. Respondent did not request or require Claimant to submit bereavement leave; Claimant did so of her own volition and in order to avoid taking PTO.

Similarly, Claimant applied for a leave of absence; Respondent did not request or require Claimant to take a medical leave. Instead, because Claimant had asked for an extension of her accommodation at the last minute, it appears she applied for medical leave to cover the time in which she obtained updated medical documentation.

> **Claimant Alleges** "*Three medical professionals have indicated that I could return to work without restriction if my accommodation was reinstated but HR has refused to act and actively engage with me in an interactive process.*"

As explained in more detail above, from about July 21, 2022 to present, Respondent has actively engaged in the interactive process with Claimant and provided her with reasonable accommodations, which are still in place.

> **Claimant Alleges** "*To date, they have failed to properly address in writing the complaint filed in May 2022 and yet her behavior continues.*"

As outlined previously, Respondent conducted two investigations into Claimant's allegations made in May and July of 2022 and held two separate meetings with Claimant to review her complaints and the outcome of the investigations. Additionally, Ms. McIntosh provided a written letter to Claimant indicating her May 2022 complaints were unsubstantiated. (See **Exhibit 4 – Letter to Claimant.**)

<u>ARGUMENT</u>

Respondent did not discriminate or retaliate against Claimant. As outlined above, Respondent worked extensively with Claimant to accommodate her alleged disability and has reasonably accommodated Claimant since July 2022 by minimizing her contact with her direct supervisor. Additionally, Respondent did not discriminate or retaliate against Claimant by rescinding her accommodation, as Claimant alleges. Her accommodation was never rescinded and is still in place. Moreover, even if Claimant could point to some disparate treatment, which she cannot, Claimant has not suffered an adverse employment action as a result of any alleged treatment by Respondent. As such, Claimant's claims for discrimination and retaliation fail.

Exhibit 5
4/5

Frances M. Santiago-Cruz v. Dignity Health Med Foundation
EEOC Number: 410-2023-00862
CONFIDENTIAL POSITION STATEMENT
May 4, 2023
Page 5

## RESPONDENT'S RESPONSE TO SUPPLEMENTAL QUESTIONS

1. The correct name and address of the facility named in the charge, and a statement or document indicating how many employees are employed at the location.

   **Response:** Dignity Health Medical Foundation, System Offices Sacramento, 3400 Data Drive, Rancho Cordova, CA 95670-7956. DHMF employs approximately 141 employees at this location.

2. Submit a copy of your most recently submitted EEO-1 Report. If you are not required to submit a report, please explain.

   **Response:** See **Exhibit 14** - EEO-1 Report.

3. A true and accurate copy of all documents in Charging Party's personnel file, including all evaluations, appraisals, performance reviews, and job action documents which indicate increases in pay, promotions, reassignments, demotions and/or termination.

   **Response:** See **Exhibit 14** – Claimant's Employee File.

4. Submit documents related to Charging Party's job duties, conduct, and use of discipline.

   **Response:** See **Exhibit 3** – Job Description.

5. Did Charging Party complain to a supervisor or a manager regarding the alleged conduct contained in the charge of discrimination? If your answer is yes, identify the person(s) who received the complaint, describing each action taken by your organization in response to that complaint. Please also provide documents which reflect the complaint and the action taken as a result.

   **Response:** Please see Position Statement above.

## CONCLUSION

For the reasons stated above, Claimant cannot sustain her legal burden of proof. Therefore, Respondent respectfully requests dismissal of the Complaint and a finding of no cause.

If you have any questions, you may contact me or Donatella Yelda at 415-438-5731 or Donatella.Yelda@CommonSpirit.org.

Sincerely,

*Erica H. Gruver*

Erica H. Gruver, Esq.
System Director, Senior Counsel – Labor & Employment
CommonSpirit Health®
P 626.744.2411
erica.gruver@commonspirit.org
330 North Brand Boulevard, Suite 400
Glendale, CA 91203

cc: Peggy Streid

Exhibit 5
5/5

HR RESPONSE – OCTOBER 23, 2022

Dear Mr. Williams:

I am writing in response to your email dated October 21, 2022, regarding my ADA Accommodation and other outstanding issues.

To begin, you stated in your email that as of October 1, 2022, I did not have an active accommodation on file and approved by the organization. That is not my understanding. I was notified by Francie Barnett, as an agent of the organization, on September 30, 2022, that she had spoken to you and you had advised her that she could "unofficially" extend my accommodation (without the necessary paperwork) and it was that extension that was revoked by her on October 15, 2022, as I will detail below.

Thank you for providing me the forms for my doctor's appointment. Please note that the doctor's appointment scheduled for October 25, 2022, is for a follow-up appointment with a Provider through Concerta Occupational Health resulting from a Worker's Compensation Claim that I initiated on October 20, 2022. I had avoided filing a claim previously as my accommodation was effective in mitigating some of the symptoms of my disability, allowing me to work.  Once it was determined my accommodation would NOT be extended beyond October 15, 2022, I was forced to go on a leave of absence and I had no choice but to file a claim. I feel the concerns about my working conditions have not been effectively addressed by the organization or my leadership because I am still experiencing harassing and retaliatory behavior by June Watson-Sherman.

At my initial Concerta appointment the Provider did not understand why my accommodation would not have been extended as I had been advised by my PCP so I am unsure if they will feel comfortable completing the forms tomorrow or if they will defer to my PCP who has been treating me. This will cause an additional delay in returning the paperwork to you as I am currently on a stand-by list and will likely be unable to get an appointment until next week.

I am extremely concerned about the financial burden an additional delay will cause as I have already had to use two (2) of my bereavement days and three (3) PTO days to cover the time I have been forced to be out of the office (10/17/2022-10/21/2022) due to the removal of my accommodation. I emailed both you and AC Saechao asking for your help and intervention in the situation on October 6, 2022, after you declined to meet with me, and you responded by deferring the decision to Francie Barnett. I sent a subsequent email to you both (copying Jane Weldon) on October 7, 2022 explaining that she had already decided not to extend my accommodation and I pleaded for your help as I felt I was essentially being forced out of my job by her decision.

On October 13, 2022, I received an email from you stating you were having issues accessing my October 7th email, so I resent it and asked you for confirmation of receipt. I did not receive a reply and sent a follow-up email again on October 20, 2022. AC replied confirming receipt and informing me that someone would be following up with me shortly.  I did not receive any further communications from you after October 13, 2022, until your email on October 21, 2022.

Exhibit 6
1 / 9

**HR RESPONSE – OCTOBER 23, 2022**

In your email you detail five (5) points regarding my accommodation and I am in agreement with those facts as they are laid out but as referenced above they do not capture the entirety of the situation. Additional details are as follows:

1. On September 15, 2022, I met with you and Jill Latuszek regarding my grievances. You addressed my bereavement and PTO resolutions that I sought in my claim but deferred all other matters to operational leadership.  During that call it was stated that policy violations that were found during the investigation had been addressed and continued to be addressed in alignment with company policy but that the treatment of those matters involving other employees is kept confidential. I was told that any adverse employment actions that I experienced as a result of the investigation, should be referred to HR immediately so they can be thoroughly investigated and any claim of retaliation would be taken very seriously in accordance with company policy. [No-Retaliation Policy – Policy Number A-030 – Effective August 22, 2022]

2. On September 15, 2022, I met with Francie to discuss the other resolutions I sought in my claim that HR had deferred to her. She stated that she was not prepared to address them at that time and had to confer with Jane Weldon. It was agreed that she would give me a reply before my accommodation was slated to end on September 30, 2022.

3. On September 28, 2022, I received the following chat from Francie where she acknowledges needing to follow-up with me and references that she was seeking your guidance in determining if my accommodation had to be "officially" extended.



4. On September 30, 2022 at 1:11pm, I spoke to Francie who informed me that based on your guidance she could "unofficially" extend my accommodation without the need of updated paperwork. Since she was travelling she would schedule a meeting to address my other resolutions at a later date. During this conversation she expressed no concerns about extending my accommodation. I know she was very well aware I still had on-going concerns with June and that I was not yet in any condition to have my accommodation lifted. To me, referencing an "unofficial" extension to this accommodation in consultation with HR, demonstrates that she knew an accommodation was needed even without a doctor's note.

CONFIDENTIAL                    *Exhibit 6*
                                *2/9*

**HR RESPONSE – OCTOBER 23, 2022**

However, I had notified her that I was prepared to obtain one if necessary. I ended the call by asking her to send me an email to document our conversation.

5.   On September 30, 2022 at 3:47pm, I was sent the following email from Francie acknowledging our conversation but I was surprised when she wrote it was only being extended through October 15, 2022, as that was not what was conveyed during our conversation.



6.   On September 30, 2022 at 4:48pm, I immediately responded to her email referencing the fact she never insinuated on our call that the accommodation was only being extended for a limited time and seeking immediate clarification on the matter. In my email I reference that she is well aware of ongoing concerns I was having with June that remain unresolved and the toll this was taking on me both physically and emotionally. She did not respond to this email in writing.



7.   On October 4, 2022 at 1:13pm, I spoke with Francie and during that conversation she referenced my email and assured me that I had nothing to worry about and that she was merely putting a date in place to ensure she followed up with me (regarding the resolutions I sought). Based on our conversation I had ABSOLUTELY no reason to believe my accommodation would be removed or I would have immediately contacted my PCP to secure the appropriate documentation needed.

3 | Page

CONFIDENTIAL                        *Exhibit 6*
                                    *3 / 9*

HR RESPONSE – OCTOBER 23, 2022

Now thinking back, pathetically, I stupidly assumed she had selected that date to address my resolutions because she was going to be providing positive feedback on my promotion before HR entered their "quiet" period. As a result, I felt completely blindsided by what transpired on October 6, 2022.

8.  On October 5, 2022 I became aware by a peer of the offsite scheduled by June that excluded me and both of my teammates that had previously brought concerns about June's behavior to HR. Both the fact that we were excluded, and the secretive way in which it was scheduled and communicated to invited team members was so egregious to me and blatantly retaliatory that I immediately scheduled a meeting for October 6, 2022, with HR and Francie to address my concerns based on your guidance to immediately report any retaliatory behavior. My meeting request was declined and my concerns were subsequently brought to your attention via email.



These are the items gifted during that offsite. Clearly there is no reasonable explanation, other than retaliation, to explain the urgency in secretively scheduling an outing to deliver these gifts that excluded the three of us especially consider an additional gift was in transit to June to provide to us. As I previously mentioned in my claim, the other teammates that were also excluded had been pre-approved for quite some time to be out of the office on the date in question before she scheduled the outing. I know retaliation had previously been addressed with June as part of my my initial investigation and as a result I hope this new violation will be taken seriously and will result in *progressive* disciplinary action as outlined in our company's policy especially in light that it impacted not solely me but three employees.

9.  On October 6, 2022, at 11:25am, I spoke with Francie and brought the matter to her attention. **Please note there had been other ongoing concerns about June's behavior I had been bringing to Francie's attention directly, without escalating to HR, since I began reporting to her under my accommodation. The offsite was <u>not</u> an isolated incident but rather an example of ongoing problematic behavior**. Francie confirmed that while she and June had discussed the likelihood of an offsite being scheduled in the future to deliver gifts, she was not aware that there was an offsite scheduled for that evening particularly because she had just sent t-shirts for the team to June that were still in transit. Additional details of that conversation pertaining to my retaliation claim against June were previously provided to you so I won't bother to restate them here.

I was extremely upset during this conversation as I feel June's actions show a blatant disregard for what has been transpiring for the past few months and any actions HR had taken to address my

CONFIDENTIAL                    Exhibit 6
                                  419

concerns of retaliation. Francie attempted to minimize the situation referencing it as a "coachable" moment which was further upsetting.

Despite knowledge of June's other problematic behavior and this new allegation, it was during this conversation that Francie informed me, without explanation, that my reporting structure would not be changing **and** that my accommodation would not be extended beyond October 15, 2022. Francie is well aware that simply talking about June and my concerns causes a visceral reaction in me where I immediately become anxious, cry, and am seemingly inconsolable and unable to concentrate triggering many of the symptoms of my disability which then negatively impacts my performance.

She then called back at 12:13pm to tell me about my discretionary bonus stating how much I am a valued and important member of this team. That is not how she has made me feel by her decision.

Based on these facts, you asked in your October 21, 2022, email whether I wish to initiate a retaliation claim against Francie Barnett for failing to extend my ADA accommodation and sadly given the circumstances I must say YES. I know this can likely be deemed an EEOC violation as the change in her stance pertaining to my accommodation pivoted upon my initiation of another retaliation claim against June. I find it particularly problematic that my accommodation was NOT extended given the following:

1.  The accommodation was effective in mitigating my symptoms allowing me to concentrate which positively impacted my performance and allowed me to continue work and meet the needs of the business without going on leave.

2.  Francie never suggested nor declared that my accommodation in any way was disruptive to the team or negatively impacted the business in any way. On the contrary, proposing that it could be extended "unofficially" would suggest she understood the gravity of the situation and didn't feel the need to deal with the red tape of getting paperwork in place.

3.  Francie was aware that June continued to display problematic behavior towards me including lying to her directly by attempting to take credit for work that I had performed (legal spreadsheet). Francie had stated that she would schedule a meeting with the 3 of us to address the on-going issues but that never occurred.

4.  Francie was aware of the physical and emotional distress symptoms I continue to display when discussing June and that I was not yet prepared nor able to go back to reporting to June directly given the totality of all the circumstances involved without it negatively impacting my health and my performance.

5.  Francie was aware even going back to our conversation on September 30, 2022, that my doctor was prepared to attest to the fact that my ADA accommodation should remain in place but assured me that it could be "unofficially" extended.

Exhibit 6
5/9

6.   Francie has had NO communication with me regarding the termination of my accommodation since rendering her decision. She failed to even communicate with me regarding establishing contingency plans for my absence. I prepared and sent a fourteen (14) page document on my own initiative detailing the open items for my regions at 11:30pm on October 13, 2022, in hopes of ensuring the least disruption to the business due the abrupt need for me to go on a leave.

The only communication from Francie in the days following her decision was to approve the use of my bereavement days. On October 8, 2022, I sent an email to Francie requesting to use the three (3) bereavement days that were restored as part of my initial claim on October 14th, 17th, and 18th before having to go on leave [Note October 14, 2022 had previously been approved as PTO].

---

**Francie Barnett -CA** <francie.barnett@commonspirit.org>     Sun, Oct 9, 2022 at 1:59 PM
To: frances.santiago-cruz@dignityhealth.org

Frances,

That is not an issue.

Francie Barnett

On Sat, Oct 8, 2022 at 7:42 AM Frances Santiago-Cruz -GA <frances.santiago-cruz@commonspirit.org> wrote:
Good morning  HR has confirmed that I have 3 days of bereavement that were credited to me for use as a result of my

claim. You have previously approved 10/14 as PTO and I would like to change that to bereavement  Given that my

accomodation will also expire that day, I would like to use the remaining bereavement on 10/17 and 10/18.

Please advise if that is an issue

Thank you in advance.

Frances

---

As a result of Francie's decision I was forced to apply for a Leave of Absence on October 6, 2022, and immediately scheduled a follow-up appointment with my PCP to complete the required forms. Their first available appointment was October 11, 2022. I also contacted Employee Health and asked for worker's compensation claim forms to be resent to me. In my doctor's note dated October 11, 2022, and in my FMLA paperwork, my Provider clearly indicates that they placed me on leave solely based on the fact that my company did not maintain my accommodation and confirmed that I would be able to be working if the

**INTERNAL MEDICINE & WELLNESS THERAPIES, INC.**

**Katherine Bisharat, MD**
**Mythili Nagaraj, MD**
**Chien Wei Kung, PA-C, RD**
**Katie Cunha, PA-C**
**Michael F. McClanahan, PA-C**
**Joshua Pruitt, PA-C**

10/11/2022

To whom it may concern,

Frances M Santiago-Cruz is a patient under our medical care and this letter is certifying that I have completed FMLA paperwork for this patient today  if her job is unable to provide her with reasonable accommodations, unfortunately it is in the interest of the patient's health for her to be on medical leave until 1/1/2023  Otherwise, if they can accommodate the patient, she is able to continue working.

Sincerely,

Chen-Wei Kung, PA-C

This letter was initially viewed by Frances M Santiago-Cruz at 10/11/2022 5:34 PM.



Exhibit 6
6/9

accommodation had remained in place. Although I understand this documentation merely needed to be submitted to LOA Central, it was also provided to you directly and to Francie for your reference.

As soon as Francie notified me that my accommodation would not be extended, I immediately reached out to HR pleading for assistance in finding a resolution to enable me to continuing working. Despite HR initially being notified of these new developments on October 6, 2022, and subsequent follow-ups on October 7th, 13th, and 20th, no action has been taken by HR to intervene and allow me to continue to work. As a result, I had no other option but to initiate a worker's compensation claim and reach out to the EEOC. Despite getting the worker's compensation forms on October 6, 2022, I had optimistically hoped for a resolution to be reached which is why I only filed the claim on October 20, 2022, after not having received a response from HR.

I again requested another meeting with you on October 20, 2022, to discuss my situation in hopes of reaching a positive resolution. This was the THIRD request for a meeting I have made to HR throughout this process in an attempt to amicably resolve this matter and to date nothing has been scheduled. My hope in meeting with you is not only to find a resolution that would enable me to return to the job I love but for you to see and hear directly from me how distressing this entire situation is for me in a way that cannot be captured in writing. I am sure by now I am just a problem to you but I want you to understand beyond the financial implications, why I am fighting so hard to maintain my employment.

In my previous declarations to HR I have commented on the challenges I have experienced personally outside of the office for the past few years: my cancer scare, having to relocate, my mom falling ill, and then subsequently passing. You are also likely aware of the departmental challenges we have faced during the past few years from a change in Director, to being understaffed, COVID, etc.

Despite all these challenges all of my performance reviews demonstrate my commitment to my work, my team, and this organization based on my ratings of EXCEEDING EXPECTATIONS. Until these situations arose with June, I was not experiencing the physical and emotional distress I have been enduring these past 5 months that negatively impact my work and make an accommodation necessary. On the contrary, work was the one positive thing in my life during my personal challenges. My peers and my business partners made me feel valued and appreciated and they continue to do so. I have said repeatedly I love job and don't want to lose it. Work has been a positive distraction from the challenges I was experiencing outside of the office and I was motivated and driven by all the positive reinforcement around me in this organization. Till this. Till now.

I have been pleading with HR for help and I am still pleading for your help to be able to return to work in a positive and healthy working environment. I hate having had to reach out to HR for help, having to discuss harassment, retaliation, a hostile work environment, accommodations, worker's compensation, my disability, etc. All of it is distressing.

I would have been disrespecting myself and my peers by remaining silent. This problematic behavior dishonors the values of this organization. I wanted a meeting so I can look you in the eye and show you with complete sincerity that I don't want to be labeled as a problem and I am devastated by all of this and I am just seeking for June's behavior to stop.

Finally, in my previous email, I mentioned a sensitive issue that I wanted to bring to your attention. I am still struggling with processing the information I was provided by an individual in senior leadership and

CONFIDENTIAL



Exhibit 6
7/9

the implications it could have to this entire process and all of the allegations I have made to date. I am actually sickened by the thoughts now ruminating in my head by the information shared with me. I am NOT filing a claim at this time but putting you on notice.

On October 12, 2022, I began to reach out to my business partners to notify them of my upcoming leave in an effort to ensure that I could properly document any open items that needed to be addressed in preparation for my absence.

My business partners were merely told that I had been on an accommodation since July, that leadership had not extended, so I would be going out on leave. In response the following information was shared with me:



The thought that my treatment could actually pertain to racial discrimination is beyond something I can even remotely begin to process given the mental distress I am already experiencing from my other claims. I know an investigation into this would only open up an even larger can of worms especially given the sources of this information.

It is infuriating to consider that discrimination may be playing a role as to why my concerns continue to be minimized and go unaddressed by my leadership and if that is also the reason my promotion has never come to fruition despite my education, experience, subject matter expertise, and accomplishments far exceeding that of both my supervisor and manager as demonstrated by metrics provided by the Legal Department.

My other claims are substantive enough to warrant appropriate action so I am hoping to avoid further complicating matters by initiating yet another claim.

Finally be advised that to date the majority of the resolutions detailed to HR on June 13, 2022, that were deferred to my operational leader have gone unaddressed. The status of those resolutions are highlighted below:

- A positive working environment that is free of harassing behavior where I can once again be empowered to provide the quality work product this organization is accustomed to receiving from me. [10/23/2022 – NOT RESOLVED]
- To be provided clear and transparent standards that are consistent for all team members particularly as it pertains to work hours, exempt standards, and PTO coverage expectations. [10/23/2022 – NOT RESOLVED]
- The ability vocalize my concerns without fear of retribution. [10/23/2022 – NOT RESOLVED]
- To not report to June Watson Sherman directly in any capacity. [10/23/2022 – DECLINED AND ACCOMMODATION TERMINATED]

CONFIDENTIAL

*Exhibit 6*
*8/9*

- To receive the promotion I was promised and have compensation backdated to November 2021. [More importantly I would also like to know, as asked on Page 3 of this document, if A REQUISITION FOR THIS POSITION WAS **EVER** FORMALLY SUBMITTED, EVEN IF DENIED, TO HUMAN RESOURCES AS IWAS PROMISED? IF SO, WHEN?] [10/23/2022 – NOT RESOLVED]
- To be granted permission to use the 3 bereavement days I was credited as part of this investigation despite it being outside of the 90 day period contained in the policy. [10/23/2022 – HR CREDITED 3 DAYS OF BEREAVEMENT THAT NEEDED TO BE USED PRIOR TO 12/31/2022 – ONE DAY WAS USED ON 10/14/2022 IN REPLACEMENT OF APPROVED PTO DAY – TWO DAYS WERE USED ON 10/17/2022 AND 10/18/2022 AS A RESULT OF NOT HAVING MY ACCOMODATION EXTENDED AND BEING FORCED TO GO ON LEAVE]
- In the interim to have all one on ones that may involve June Watson Sherman be conducted with an additional leader or human resources individual present and/or have the meetings recorded. [10/23/2022 – THIS WAS ADDRESSED BY MY ACCOMODATION BUT SINCE IT WAS NOT EXTENDED IT IS MY UNDERSTANDING THIS IS DECLINED ALTHOUGH THAT IS MY ASSUMPTION AND NOT FORMALLY STATED.]
- Have my timecard/PTO adjusted in accordance with the days identified by you in your June 27, 2022 email [10/23/2022 – PER JUSTIN THIS IS IN PROCESS BUT IS DELAYED BECAUSE HR IS CURRENTLY IN A "QUIET" PERIOD WHERE REQUESTS FOR ADJUSTMENTS ARE ON HOLD. CURRENLY OWED A CREDIT OF FOUR PTO DAYS (32 HOURS FOR 11/10/2021, 01/25/2022, 04/07/2022, AND 04/08/2022) THIS IS URGENT DUE TO THE FINANCIAL IMPLICATIONS I AM CONFRONTING BY HAVING TO GO ON LEAVE DUE TO MY ACCOMODATION NOT BEING EXTENDED]
- A formal apology, in writing, by June Watson Sherman for the false and accusatory statements she made in both her July 5, 2022 [SEE EXHIBIT 14] and July 7, 2022 [SEE EXHIBIT 10], emails when I did nothing wrong.  [10/23/2022 – NOT RESOLVED]

Again, I understand it may take some time to review and investigate the information that I am providing and I hope that my concerns will be reviewed in their entirety and not minimized especially considering HR has repeatedly informed me they take complaints about retaliation very seriously and that our company's policy calls for progressive disciplinary action for repeated violations.

If you can please let me know as soon as possible what you anticipate will be the timing of your investigation and if there are any immediate remedies that can be implemented to move things in a positive direction. I understand I need to return the ADA paperwork to you in a timely manner but I am unsure the delay in getting an appointment scheduled with my PCP and I am gravely concerned about the financial implications this is having on me and my family. Under your direction Francie had allowed for my accommodation to be extended "unofficially" and hope that you would consider doing so again pending receipt of my paperwork. Please let me know if you have any questions.

Respectfully,

Frances M Santiago-Cruz
Asmile4ya1@gmail.com
916-880-0621


Exhibit 6
9/9

**Certification of Health Care Provider for**
**Employee's Serious Health Condition**
**under the Family and Medical Leave Act**

**U.S. Department of Labor**
**Wage and Hour Division**



DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR.
RETURN TO THE PATIENT.

OMB Control Number : 235-0003
Expires  6/30/2023

The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. 29 U.S.C. §§ 2613, 2614(c)(3); 29 C.F.R. § 825.305. The employer must give the employee at least 15 calendar days to provide the certification. If the employee fails to provide complete and sufficient medical certification, his or her FMLA leave request may be denied. 29 C.F.R. § 825.313. Information about the FMLA may be found on the WHD website at www.dol.gov/agencies/whd/fmla.

## SECTION I – EMPLOYER

Either the employee or the employer may complete Section I. While use of this form is optional, this form asks the health care provider for the information necessary for a complete and sufficient medical certification, which is set out at 29 C.F.R. § 825.306. You may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Additionally, you may not request a certification for FMLA leave to bond with a healthy newborn child or a child placed for adoption or foster care.

Employers must generally maintain records and documents relating to medical information, medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

(1)  Employee name: Frances Santiago-Cruz

(2)  Employer name and contact: CommonSpirit Health _____ (999) 999-9999 ___ Date: 10/6/2022
(List date certification requested)

(3)  The medical certification must be returned by 10/22/2022
(Must allow at least 15 calendar days from the date requested, unless it is not feasible despite the employee's diligent, good faith efforts.)
Fax: (312) 778-6527
Email: laura.harryman@dignity health.org
Mail: 3900 Olympic Blvd
Suite 300
Erlanger, KY 41018-1099

(4)  Employee's job title: PROVIDER CONTRACT SPECIALIST _____ Job description ( ☐ is /☒ is not) attached.
Employee's regular work schedule: M-F  7am - 3:30 pm
Statement of the employee's essential job functions:
(The essential functions of the employee's position are determined with reference to the position the employee held at the time the employee notified the employer of the need for leave or the leave started, whichever is earlier.)

## SECTION II - HEALTH CARE PROVIDER

Please provide your contact information, complete all relevant parts of this Section, and sign the form. Your patient has requested leave under the FMLA. The FMLA allows an employer to require that the employee submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to the serious health condition of the employee. For FMLA purposes, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves inpatient care or continuing treatment by a health care provider. For more information about the definitions of a serious health condition under the FMLA, see the chart on page 4.

You are not required to, provide other appropriate medical facts including symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment. Please note that some state or local laws may not allow
Page 1 of 4                                                                        Form WH-380-E, Revised June 2020

Exhibit 7
1/3

**Employee Name:** Frances Santiago-Cruz

**Health Care Provider's name:** (Print) Chien-Wei Kung

**Health Care Provider's business address:** 6815 Car Oaks Blvd, Cantrell, CA 95608

**Type of practice / Medical specialty:** Internal Medicine

**Telephone:** (16) 481-4389   **Fax:** (14) 481-4307   **E-mail:** ____

## PART A: Medical Information

Limit your response to the medical condition(s) for which the employee is seeking FMLA leave. Your answers should be your best estimate based upon your medical knowledge, experience, and examination of the patient. After completing Part A, complete Part B to provide information about the amount of leave needed. Note: For FMLA purposes, "incapacity" means the inability to work, attend school, or perform regular daily activities due to the condition, treatment of the condition, or recovery from the condition. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in 29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members. 29 C.F.R. § 1635.3(b).

(1) State the approximate date the condition started or will start: 07/20/2022   *(mm/dd/yyyy)*

(2) Provide your best estimate of how long the condition lasted or will last: Until 01/01/2023   *(mm/dd/yyyy)*

(3) Check the box(es) for the questions below, as applicable. For all box(es) checked, the amount of leave needed must be provided in Part B

☐ **Inpatient Care**: The patient (☐ has been / ☐ is expected to be) admitted for an overnight stay in a hospital, hospice, or residential medical care facility on the following date(s): ____

☐ **Incapacity plus Treatment**: *(e.g. outpatient surgery, strep throat)*
Due to the condition, the patient (☐ has been / ☐ is expected to be) incapacitated for *more than* three consecutive, full calendar days from ____ *(mm/dd/yyyy)* to ____ *(mm/dd/yyyy)*.

The patient (☐ was / ☐ will be) seen on the following date(s): ____

The condition (☐ has / ☐ has not) also resulted in a course of continuing treatment under the supervision of a health care provider *(e.g. prescription medication (other than over-the-counter) or therapy requiring special equipment)*

☐ **Pregnancy**: The condition is pregnancy. List the expected delivery date: ____ *(mm/dd/yyyy)*.

☒ **Chronic Conditions**: *(e.g. asthma, migraine headaches)* Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year.

☐ **Permanent or Long Term Conditions**: *(e.g. Alzheimer's, terminal stages of cancer)* Due to the condition, incapacity is permanent or long term and requires the continuing supervision of a health care provider (even if active treatment is not being provided).

☐ **Conditions requiring Multiple Treatments**: *(e.g. chemotherapy treatments, restorative surgery)* Due to the condition, it is medically necessary for the patient to receive multiple treatments.

☐ **None of the above**: If none of the above condition(s) were checked, (i.e., inpatient care, pregnancy) no additional information is needed. Go to page 4 to sign and date the form.

Form WH-380-E, Revised June 2020

Exhibit 7
2/3

Employee Name: _Farely Santiago- (MI2_

## PART C: Essential Job Functions

If provided, the information in Section I question #4 may be used to answer this question. If the employer fails to provide a statement of the employee's essential functions or a job description, answer these questions based upon the employee's own description of the essential job functions. An employee who must be absent from work to receive medical treatment(s), such as scheduled medical visits, for a serious health condition is considered to be *not able* to perform the essential job functions of the position during the absence for treatment(s).

*(1)*   Due to the condition, the employee (☐  was not able / ☐  is not able / ☒  will not be able) to perform *one or more* of the essential job function(s). Identify at least one essential job function the employee is not able to perform:

_All of them - she is not able to work due to job not being able t. provide_
_reasonable accommodation_

**Signature of**
**Health Care Provider** _[signature]_                                    Date _10/11/2022_  *(mm/dd/yyyy)*

| **Definitions of a Serious Health Condition** (See 29 C.F.R. § 825.113-.115) |
|---|
| **Inpatient Care** |
| • An overnight stay in a hospital, hospice, or residential medical care facility<br>• Inpatient care includes any period of incapacity or any subsequent treatment in connection with the overnight stay. |
| **Continuing Treatment by a Health Care Provider (any one or more of the following)** |
| **Incapacity Plus Treatment:** A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves either:<br>○ Two or more in-person visits to a health care provider for treatment within 30 days of the first day of incapacity unless extenuating circumstances exist. The first visit must be within seven days of the first day of incapacity; or,<br>○ At least one in-person visit to a health care provider for treatment within seven days of the first day of incapacity, which results in a regimen of continuing treatment under the supervision of the health care provider. For example, the health provider might prescribe a course of prescription medication or therapy requiring special equipment. |
| **Pregnancy:** Any period of incapacity due to pregnancy or for prenatal care. |
| **Chronic Conditions:** Any period of incapacity due to or treatment for a chronic serious health condition, such as diabetes, asthma, migraine headaches. A chronic serious health condition is one which requires visits to a health care provider (or nurse supervised by the provider) at least twice a year and recurs over an extended period of time. A chronic condition may cause episodic rather than a continuing period of incapacity. |
| **Permanent or Long-term Conditions:** A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective, but which requires the continuing supervision of a health care provider, such as Alzheimer's disease or the terminal stages of cancer. |
| **Conditions Requiring Multiple Treatments:** Restorative surgery after an accident or other injury; or, a condition that would likely result in a period of incapacity of more than three consecutive, full calendar days if the patient did not receive the treatment. |

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. The Department of Labor estimates that it will take an average of 15 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor: Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR. RETURN TO THE PATIENT.**

Form WH-380-E, Revised June 2020

_Exhibit 7_
_3/3_



**Detailed Hours By Pay Cod**

Pay Period End Between 10/1/2022 and 12/31/20:

Report Prepared On: 8/7/2023 2:43:05 PM

| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---------|--------------------|-----------------|-----------------------|-------|---------------|-------------|------|----------|------|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/03/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/04/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/05/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/06/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/07/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/10/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/11/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/12/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/13/2022 | 100-EXEMPT | 8.00 |

Exhibit 8
1/7

Record Count: 61



**Detailed Hours By Pay Cod**

Pay Period End Between 10/1/2022 and 12/31/20:

Report Prepared On: 8/7/2023 2:43:05 PM

| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---|---|---|---|---|---|---|---|---|---|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/14/2022 | 510-BEREAVE | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/17/2022 | 510-BEREAVE | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/18/2022 | 510-BEREAVE | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/19/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/19/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/20/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/20/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/21/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/21/2022 | LOA | 8.00 |

Exhibit 8
2/7

Record Count: 61



**Detailed Hours By Pay Cod**

Pay Period End Between 10/1/2022 and 12/31/20:

Report Prepared On: 8/7/2023 2:43:05 PM

| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---|---|---|---|---|---|---|---|---|---|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/24/2022 | 500-PTO | 2.08 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/24/2022 | 502-EIB | 5.92 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/24/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/25/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/25/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/26/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/27/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/28/2022 | 500-PTO | 6.13 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/28/2022 | LOA | 8.00 |

Exhibit 8
3/7

Record Count: 61



| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---------|---------------------|-----------------|------------------------|-------|---------------|-------------|------|----------|------|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 10/31/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/01/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/02/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/03/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/04/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/07/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/08/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/09/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/10/2022 | LOA | 8.00 |

Exhibit 8
417

Record Count: 61


# Dignity Health.

| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---------|---------------------|-----------------|------------------------|-------|----------------|-------------|------|----------|------|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/11/2022 | 500-PTO | 19.31 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/11/2022 | 502-EIB | 0.71 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/11/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/25/2022 | 500-PTO | 19.79 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 11/25/2022 | 502-EIB | 0.23 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/09/2022 | 500-PTO | 12.79 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/09/2022 | 502-EIB | 0.23 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/12/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/13/2022 | LOA | 8.00 |

Exhibit 8.
5/7



**Detailed Hours By Pay Cod**

Pay Period End Between 10/1/2022 and 12/31/20;

Report Prepared On: 8/7/2023 2:43:05 PM

| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---|---|---|---|---|---|---|---|---|---|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/14/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/15/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/16/2022 | 500-PTO | 1.35 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/16/2022 | 502-EIB | 0.15 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/16/2022 | LOA | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/19/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/20/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/21/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/22/2022 | 100-EXEMPT | 8.00 |

Exhibit 8
6/7

Record Count: 61



| Home PL | Home PL Description | Home Department | Home Dept Description | Union | Employee Name | Employee ID | Date | Pay Code | Hour |
|---------|---------------------|-----------------|-----------------------|-------|---------------|-------------|------|----------|------|
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/23/2022 | 100-EXEMPT | 1.50 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/23/2022 | 100-EXEMPT | 6.50 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/26/2022 | 500-HOL PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/27/2022 | 100-EXEMPT | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/28/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/29/2022 | 500-PTO | 8.00 |
| 188 | DIGNITY HEALTH MED GRP REGION | 871220 | PHYSICIAN SERVICES-SUP SVCS | EXEMPT | SANTIAGO-CRUZ, FRANCES M | 638522 | 12/30/2022 | 100-EXEMPT | 8.00 |

Exhibit 8
717

Record Count: 61



## RESOLUTION OF REQUEST FOR REASONABLE ACCOMMODATION

| Name of individual requesting reasonable accommodation | Date |
|---|---|
| Frances Santiago-Cruz | 12/15/2022 |

Type of reasonable accommodation requested (describe)

- Employee (Frances Santiago-Cruz) requested for Francie Barnett (Director) to be in attendance during monthly scheduled 1:1 meetings that include the department manager June Watson-Sherman. These 1:1 meetings are scheduled for 1 hour per month on a recurring basis.
- Additionally Frances would like to bring any escalated issues that may arise within the department directly to the Director of the department for resolution.
- Frances would like additional oversight by the Director regarding the usage and scheduling of PTO for herself by engaging with the Director when necessary.
- June should copy someone (Jonni and/or Francie) on any communications with Frances including work assignments.
- Someone else (Jonni) should be in attendance for any meetings/training (outside the 1-on-1) June needs to have with Frances.
- If no one is available to attend a meeting that is needed, Frances could request that it be recorded.
- Frances can turn off her camera and choose not to participate in any zoom calls that involve any of the topics that were at issue during Frances' claim with June.
- June to provide Frances a heads up if she plans to attend any of the regular meetings that Frances hosts.
- If I Frances is on PTO and an urgent matter arises that requires Frances to log on she will notify Francie/June in writing of her intent and the reason why.

Accommodation(s)
- ⌋ Approved as requested
- X Approved alternative accommodation, as described below
- ⌋ Denied

If alternative accommodation was proposed, indicate whether it was:
- X Accepted
- ⌋ Rejected

Request denied due to (check all that apply)
- X Accommodation ineffective
- ⌋ Accommodation would cause undue hardship
- X Accommodation would require removal of essential function
- ⌋ Medical documentation inadequate
- ⌋ Accommodation would require lowering performance or production standard
- ⌋ Other (identify):

If the HR offered an alternative accommodation that is different from the one originally requested, explain: (a) the reasons for the denial of the accommodation originally requested; and (b) why the alternative accommodation would be effective.

1. **June should copy someone (Jonni and/or Francie (I believe Francie didn't want to do it) on any communications with me including work assignments.**
   a. This request, as proposed, is not approved for an accommodation. However, email communication is already a record and you have copies of all emails addressed or sent to you. The current standard and normal business practice would be for you to report any issue of inappropriate conduct you feel has occurred, you can and should submit those emails to your Director or to Human Resources as you have done in the past. As a reminder, to the extent you make a good faith complaint of conduct that violates our policies, we will investigate such allegations and our organization prohibits retaliation based on such complaints.

(continues below)

CONFIDENTIAL

Exhibit 9
1/2

2. **Someone else (Jonni) should be in attendance for any meetings/training (outside the 1-on-1) June needs to have with me.**
   a. An accommodation can be reached for this request to generally avoid other 1:1 direct meetings with June. You are in control of your meeting schedule and should take steps to reschedule meetings that would place you in a situation where 1:1 meeting with June may occur. Please note that during normal business activities it may be necessary for June to have a 1:1 discussion with you as it relates to any urgent items that may arise on occasion. Although you should make every effort to schedule meetings to avoid such 1:1s, we recognize (and so do you based on your next request) that such meetings may sometimes occur.

3. **If no one is available to attend a meeting that is needed, I could request that it be recorded.**
   a. If you are not able to reschedule the meeting where a 1:1 conversation with June will occur then you may use the "record" function via Zoom. Zoom will bring up a notice that the meeting is being recorded and attendees have the right to opt out. Because California is a two party consent state when it comes recording private conversations we cannot make a determination as to who agrees to be recorded and who opts out. This option should only be used if the meeting is a 1:1 conversation where other attendees cannot be present.

4. **I can turn off my camera and choose not to participate in any zoom calls that involve any of the topics that were at issue during my claim with June.**
   a. This request is denied as it would be asking to forego an essential function of your role. If you have more details as to how this will allow you to perform the essential functions of your job we are open to continuing to review this request now and into the future.

5. **June to provide me a heads up if she plans to attend any of the regular meetings I host.**
   a. There is no need to approve an accommodation related to this request as you are in control of the meetings you set and who the attendees are. In some cases, meeting invites can be forwarded, but as the host of the meetings you would receive notice through the calendar system so notice would be provided via that action.

6. **If I am on PTO and an urgent matter arises that requires me to log on I will notify Francie/June in writing of my intent and the reason why.**
   a. An accommodation is not approved for this request as the normal workplace standard is for employees to not perform work while out on PTO.

**Additional Comments:**
The temporary approved accommodation(s) is listed below and will be in place for 90 days from the date of employees return to work date. After 90 days the request will be re-evaluated.

**Approved accommodations:**
1. Francie Barnett (Director) to be in attendance during monthly scheduled 1:1 meetings that include the department manager June Watson-Sherman. These 1:1 meetings are scheduled for 1 hour per month on a recurring basis.
2. Frances would like to bring any escalated issues that may arise within the department directly to the Director of the department for resolution.
3. Frances would like additional oversight by the Director regarding the usage and scheduling of PTO for herself by engaging with the Director when necessary.
4. If a meeting or training occurs that would result in Frances and June being the only attendees Frances will work to reschedule the meeting. . Please note that during normal business activities it may be necessary for June to have a 1:1 discussion with you as it relates to any urgent items that may arise on occasion. Although you should make every effort to schedule meetings to avoid such 1:1s, we recognize (and so do you based on your next request) that such meetings may sometimes occur.
5. If you are not able to reschedule the meeting where a 1:1 conversation with June will occur then you may use the "record" function via Zoom. Zoom will bring up a notice that the meeting is being recorded and attendees have the right to opt out. Because California is a two party consent state when it comes recording private conversations we cannot make a determination as to who agrees to be recorded and who opts out. This option should only be used if the meeting is a 1:1 conversation where other attendees cannot be present.

| Name of Primary HR Representative | Date: |
|---|---|
| Justin Williams | 12/15/2022 |

Exhibit 9
2/2



## RESOLUTION OF REQUEST FOR REASONABLE ACCOMMODATION

| Name of individual requesting reasonable accommodation<br>**Frances Santiago-Cruz** | Date | **11/15/2022** |
|---|---|---|

Type of reasonable accommodation requested (describe)

Employee requested a change in reporting structure to allow her to no longer report to her current manager, June Watson-Sherman.

Accommodation(s)
- ⌋    Approved as requested
- ⌋    Approved alternative accommodation, as described below
- X    **Denied**

If alternative accommodation was proposed, indicate whether it was:
- ⌋    Accepted
- ⌋    Rejected

Request denied due to (check all that apply)
- ⌋    Accommodation ineffective
- X    Accommodation would cause undue hardship
- ⌋    Accommodation would require removal of essential function
- ⌋    Medical documentation inadequate
- ⌋    Accommodation would require lowering performance or production standard
- ⌋    Other (identify):

Detailed reason(s) for denial of request for accommodation:

The requested resolution to no longer report to your current manager (June Watson-Sherman) cannot be accommodated due to the hardship it would place on the organization. The Physician Contracting Department is a small department with a very limited amount of leadership positions. June is the only Manager in the department and as such she is the individual responsible for daily oversight of the Physician Contracting department. The Manager level role is responsible for the day to day work of the department while partnering with the Director on strategy and initiatives. The role of the Director is not one of a day to day manager as they rely on the Manager to handle those tasks. The Director is not involved in all meetings required to support the day to day activities of the Physician Contracting team as they do not have the time to attend these meetings and concurrently support the other work of a Director. While this accommodation request is denied, we remain open and willing to work with you to find an accommodation that may work.

If the HR offered an alternative accommodation that is different from the one originally requested, explain: (a) the reasons for the denial of the accommodation originally requested; and (b) why the alternative accommodation would be effective.

| Name of Primary HR Representative<br>**Justin Williams** | Date: | **11/15/2022** |
|---|---|---|

Additional comments:

*Exhibit 10*
*1/1*

Mail body: Fwd: ADA Accommodation request resolution

---

---------- Forwarded message ---------
From: **Frances Santiago** <asmile4ya1@gmail.com>
Date: Mon, Nov 21, 2022 at 9:31 AM
Subject: Fwd: ADA Accommodation request resolution
To: A C Saechao -CA <ac.saechao@commonspirit.org>, Justin Williams -CA <justin.williams@commonspirit.org>

Justin, 

Good Morning. Thank you for taking the time to meet with me on Friday. You brought me a lot of clarity into the situation which I greatly needed and appreciated. I have been thinking about our conversation and based on what was said, I am writing to ask if the review and approval of my accommodation can be escalated to Jane Weldon or someone else other than Francie. 

On  November 15th, you signed the attached document in your official capacity on behalf of the DHMF denying my accommodation request stating that it created an undue hardship for the company. I now understand this was based on false information provided to you by Francie regarding the duties she would need to perform as my â€œinterimâ€ manager. As I explained given my twenty years of contracting experience this was not true. In that role Francie was needed for the following three tasks:

1. Participation in 1-on-1 - One hour per month 
2. Escalations 
3. PTO issues particularly if I would need to work while on PTO due to an urgent or time sensitive matter. 

I believe all of these tasks fall within the scope of her job description as my Director, regardless of my accommodation, so  they should in  no way be considered undue harm. It was the other items on my accommodation limiting my direct contact with June which  are of greater importance and as I mention in many ways they protect both parties. 

As I also mentioned I was responsible for contracting for regions that account for 67.2% of all employed Providers for DHMF and despite 2 months of medical leave my production last year accounted for 34% of all the agreements handled by my department. I feel her decision in itself is what may be causing undue harm for the company as my team members had to suddenly absorb this volume, likely resulting in unnecessary delays in the processing of requests for our business partners. 

Given all of this information, I am hoping someone other than Francie may be able to make the decision, on behalf of the business, to approve my accommodation and allow me to return to work as soon as possible. I believe all the new information I gathered from our call only serves to support my claim that her decision to rescind my accommodation was retaliatory so I am uncomfortable with her making the decision. Please let me know your thoughts.

Best, 

Frances Santiago-Cruz

Exhibit 11
11

**Mail body: Fwd: Heard you have an opening...I have two people :-)**

---------- Forwarded message ----------
From: **Frances Santiago** <asmile4ya1@gmail.com>
Date: Tue, Dec 19, 2023 at 2:29 AM
Subject: Fwd: Heard you have an opening...I have two people :-)
To: <printandgo@fedex.com>, <stAples@printme.com>, <officedepot@printme.com>

---------- Forwarded message ----------
From: **Tiffany Tidwell CA-Rancho Cordova** <tiffany.tidwell@commonspirit.org>
Date: Wed, May 12, 2021 at 11:10 AM
Subject: Re: Heard you have an opening...I have two people :-)
To: Hartman, Jonni - DHMF <jonni.hartman@dignityhealth.org>

My top choice is a recent graduate who I couldn't endorse more. He is a star! I am telling you Jonni, this is someone I cannot express enough we want to snatch up. While he doesn't have contract experience, he is a brilliant mind, hard-working, reliable, and full of passion for our organization. He is business savvy and has a credible work history, but what he has more than anything are the intangibles you can't teach.

If I had an opening, I would grab him, he is just one of those people you want on your team. Attached is his resume, I can assure you - he will be worth your time to have a conversation.

Please let me know your thoughts. :-)

Thank you so much,

Tiffany
Tiffany Tidwell
Director
Human Resources & Physician Relations
Certified Physician Coach

**(530) 313-3263 Mobile**

tiffany.tidwell@commonspirit.org

On Wed, May 12, 2021 at 10:17 AM Jonni Hartman CA-Rancho Cordova <jonni.hartman@commonspirit.org> wrote:
  Hello!

  Sure can you send me their resumes?

  **Jonni Hartman**

  Interim Manager, Physician Contracting

*Exhibit 12*
*1/1*